IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 99-005 (SLR) |
| ) | |
| DENTSPLY INTERNATIONAL INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT DENTSPLY INTERNATIONAL INC.'S BRIEF IN SUPPORT
OF ITS MOTION TO STAY BRIEFING ON THE
GOVERNMENT'S MOTION FOR ENTRY OF FINAL JUDGMENT**

William D. Johnston (No. 2123)
Christian Douglas Wright (No. 3554)
YOUNG CONAWAY
    STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
cwright@ycst.com
(302) 571-6600

Brian M. Addison
DENTSPLY INTERNATIONAL INC.
Susquehanna Commerce Center
221 West Philadelphia Street
York, PA 17405
(717) 845-7511

Margaret M. Zwisler
Eric J. McCarthy
Charles R. Price
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Washington, DC 20004
(202) 637-2200

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ..................................................................................... 1

BACKGROUND ................................................................................................................................... 1

    A.    Case History............................................................................................................................ 1

    B.    The Government's Position on the Timing of the Entry of Judgment..................... 4

SUMMARY OF ARGUMENT ............................................................................................................. 5

ARGUMENT .......................................................................................................................................... 6

CONCLUSION....................................................................................................................................... 7

# TABLE OF AUTHORITIES

## CASES

*CDC Techs., Inc. v. IDEXX Labs., Inc.*, 186 F.3d 74 (2d Cir. 1999)............................................. 2

*Dentsply International, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656 (D. Del. 1990)........................... 6

*Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1069 (3d Cir. 1984) ............................................. 6

*Landis v. North American Co.*, 299 U.S. 248 (1936)................................................................... 6

*Omega Envt'l, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157 (9th Cir. 1997).......................................... 2, 4

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984)...................................... 3

*Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215 (8th Cir. 1987)....................................................... 2

*Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555 (11th Cir. 1991) ...................................... 3

*Tampa Electric v. Nashville Coal Co.*, 365 U.S. 320 (1961)......................................................... 2

*U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589 (1st Cir. 1993)..................................... 3

*United States v. Dentsply International, Inc.*, 277 F. Supp. 2d 387 (D. Del. 2003) ....................... 1

*United States v. Dentsply International, Inc.*, 399 F.3d 181 (3d Cir. 2005) .................................. 2

Dentsply International Inc. ("Dentsply") submits this brief in support of its motion to stay briefing on the government's Motion for Entry of Final Judgment pending final disposition of Dentsply's petition for a writ of certiorari in the Supreme Court of the United States to review the Third Circuit's reversal of this Court's judgment in favor of Dentsply.

## NATURE AND STAGE OF PROCEEDINGS

On January 5, 1999, the United States Department of Justice, Antitrust Division ("government") filed a complaint against Dentsply alleging that Dentsply's Criterion 6 constituted an unlawful exclusive dealing arrangement under Section 1 of the Sherman Act and Section 3 of the Clayton Act, and further constituted an unlawful use of monopoly power under Section 2 of the Sherman Act. (D.I. 1). Dentsply adopts by reference the government's summary of the proceedings that followed. (D.I. 542 at 1). Dentsply would add, however, that the Third Circuit denied Dentsply's timely filed petition for rehearing and rehearing *en banc* on May 17, 2005.

## BACKGROUND

A.   **Case History**

On August 8, 2003, this Court entered judgment for Dentsply after a 4-week bench trial. *United States v. Dentsply International, Inc.*, 277 F. Supp. 2d 387 (D. Del. 2003). The Court found that Dentsply's exclusive dealing policy ("Criterion 6") neither foreclosed rivals from competing in the market for artificial teeth nor otherwise posed probable anticompetitive effects, and thus the government had failed to prove that Dentsply violated either Section 1 of the Sherman Act or Section 3 of the Clayton Act. The Court further found that the government failed to prove that Dealer Criterion 6 had an actual adverse effect on market competition in violation of Section 2 of the Sherman Act.

The government appealed only this Court's Section 2 determination, and, on February 25, 2005, the Third Circuit reversed the judgment in favor of Dentsply and remanded the case to this Court with directions to grant the injunctive relief requested by the government. *United States v. Dentsply International, Inc.*, 399 F.3d 181, 197 (3d Cir. 2005). In reaching its decision, the Third Circuit concluded that it was not precluded by this Court's undisturbed dismissal of the government's Clayton § 3 claim (on insufficient evidence of probable anticompetitive effects) from examining for itself whether Dealer Criterion 6 could still be found to have an actual anticompetitive effect under Sherman § 2.

The decision presents substantial issues on which Dentsply believes there is a reasonable likelihood that four Justices will vote to grant certiorari and the majority of the Supreme Court will vote to reverse. This is the first time an appellate court has held unlawful under Section 2 of the Sherman Act the use by a major market participant of an exclusive dealing arrangement that has been found neither to impede nor foreclose rivals from reaching end-users in the relevant market. The decision cannot be squared with the Supreme Court's decision in *Tampa Electric v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961), holding that exclusive dealing arrangements raise no antitrust concerns unless they foreclose competition in a substantial share of the line of commerce affected.

At least six other courts of appeals have utilized the framework outlined in *Tampa Electric* and considered the full range of distribution options to which rivals could practicably turn to reach the ultimate customers of the line of commerce affected. *See Omega Envt'l, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997) (no foreclosure as a matter of law where "[c]ompetitors are free to sell directly, to develop alternative distributors, or to compete for the services of existing distributors."); *CDC Techs., Inc. v. IDEXX Labs., Inc.*, 186 F.3d 74, 80-81 (2d Cir. 1999) (affirming summary judgment dismissal of antirust claims where IDEXX's exclusive dealing arrangements did not impede CDC's ability to reach the ultimate customers of the machines); *Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215, 1233 (8th Cir. 1987) (holding that

2

foreclosure was "neither substantial nor apparent" where Ryko's competitors could utilize direct sales and their own distributors); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984) (holding that exclusive dealing has no anticompetitive effects as a matter of law where rival manufacturer had the resources to establish its own dealer or sell directly); *U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 596 (1st Cir. 1993) (affirming summary judgment on ground that HMO was not foreclosed from market by defendants' exclusive arrangements with doctors because it could easily bid for the "significant" number of doctors tied to the defendant HMO, or attract new doctors to its own HMO); *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1572-73 (11th Cir. 1991) (no foreclosure attributable to defendant's exclusive distributor contracts because plaintiffs could access the market by attracting potential alternative distributors).

The Third Circuit's decision deviates from this analytical framework in several important respects. First, the Third Circuit held that the relevant market in which to measure the effects of Criterion 6 should include both dealers and their dental laboratory customers. 399 F. 3d at 188. The court then focused its foreclosure analysis on the fairly obvious foreclosure of Dentsply's rivals from selling to the 23 authorized dealers who sold Dentsply teeth under Criterion 6. Second, the Third Circuit did not consider all existing or potential alternative channels of distribution. Most notably, the Third Circuit ignored this Court's findings that Dentsply's rivals could and did reach end-user purchasers of artificial teeth through dealers not carrying Dentsply teeth and thus not subject to Criterion 6. Third, the Third Circuit held to be "clear error" this Court's finding that the availability of direct sales to end users was a viable alternative method of distribution because, in the court's opinion, direct distribution was not as "effective" as distributing through authorized Dentsply dealers. *Id.* at 193. To reach this conclusion, the Third Circuit relied largely on a market share analysis and determined that the much smaller market shares of Dentsply's rivals gave them no real prospect to "pose a real threat" to Dentsply's market position.

Here, this Court held that Dentsply's exclusive dealerships under Criterion 6 posed *no probability* of anticompetitive effects under Section 3 of the Clayton Act. Notwithstanding the government's failure to appeal the "no probability" determination under § 3 of the Clayton Act, the Third Circuit nonetheless found that Criterion 6 presented *actual* anticompetitive effects under § 2 of the Sherman Act. This determination, Dentsply believes, is further reason for Supreme Court review. To our knowledge, every other Circuit to have addressed this issue disagrees with the Third Circuit on this point of law. *Compare CDC Technologies, Inc.*, 186 F.3d at 79 (2d Cir.) ("We need not discuss the respondents' further contention that the contract also violates § 1 and § 2 of the Sherman Act, for if it does not fall within the broader proscription of § 3 of the Clayton Act it follows that it is not forbidden by those of the former."); *Gilbarco, Inc.*, 127 F.3d at 1167 n. 13 (9th Cir.) (same); *Ryko Mfg.*, 823 F.2d at 1233 n.16 (8th Cir.) ("The parties did not extensively address the Section 1 claim in this appeal, but our resolution of the Clayton Act claim disposes of the issue. If a contract is not prohibited by 'the broader proscription of § 3 of the Clayton Act it follows that it is not forbidden by those of the [Sherman Act].'").

### B.  The Government's Position on the Timing of the Entry of Judgment

On June 24, 2005, the government forwarded to Dentsply a draft of its proposed final judgment and invited Dentsply to comment on its terms. During the summer, Dentsply and the government had several telephone conversations during which Dentsply expressed its concerns with the government's proposal. Dentsply told the government that it intended to file a petition for writ of certiorari in the Supreme Court of the United States to review the Third Circuit's reversal of this Court's judgment in favor of Dentsply. Given its belief that it would win on appeal, Dentsply told the government that it considered a full briefing on a motion for entry of final judgment prior to any decision by the Supreme Court on its cert petition to be a waste of resources. In addition, Dentsply told the government that any public briefing on the proposed terms of the injunction would potentially require it to expose aspects of its distribution strategy

4

to its competitive detriment, an exercise that would be completely unnecessary if the Supreme Court ruled in its favor. The government acknowledged the wisdom of deferring action by this Court on an injunction and repeatedly assured counsel for Dentsply that it would not seek entry of final judgment until the Supreme Court had ruled definitively on Dentsply's appeal.

On August 5, 2005, the government reiterated this commitment to Dentsply. In a facsimile to Dentsply's counsel, the government confirmed again that it would "not affirmatively seek to have the district court enter, *or even actively consider*, this injunctive relief, until after the Supreme Court acts on Dentsply's petition." (Ex. 1, Facsimile from J. Jacobs to M. Zwisler, dated August 5, 2005) (emphasis added). However, the government continued to hold the view that the parties should brief the issue of the scope of the injunction. Dentsply continued to hold the view that the whole issue should await the Supreme Court's decision on Dentsply's appeal.

On September 15, 2005, the government informed Dentsply that it "was not willing to delay [its] filing any longer" and intended to move for entry of final judgment the next day. (Ex. 2, Letter from J. Jacobs to M. Zwisler, dated September 15, 2005). The government filed its motion on September 16 (D.I. 541).

## SUMMARY OF ARGUMENT

The balance of interests favors a stay of the briefing on the government's Motion for Entry of Final Judgment. The government has said that it does not intend to ask the Court to enter the injunction or actively consider its motion until after the Supreme Court has ruled on Dentsply's petition. There is thus no purpose to be served in briefing the motion at this time. On the other hand, Dentsply will be prejudiced if it is required to brief the appropriate scope of relief at this time. Given the pronounced circuit split between the Third Circuit and the First, Second, Fourth, Sixth, Seventh, Eighth, Ninth and Eleventh Circuits, Dentsply expects to prevail before

the Supreme Court. Thus, any briefing now on the terms of an injunction that may never issue is a complete waste of resources. Moreover, Dentsply will suffer competitive harm if it must reveal competitively sensitive information about its distribution strategy in order to convince the Court that the scope of the government's proposed injunction is unwarranted. This Court should therefore stay briefing on the government's motion.

### ARGUMENT

This Court has "'broad power to stay proceedings.'" *Dentsply International, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (quoting *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976)). It is also well established that the "power to stay proceedings is incidental to the power inherent in every court to schedule disposition of the cases on its docket so as to promote fair and efficient adjudication." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1069, 1077 (3d Cir. 1984). It is up to the trial court to weigh the competing interest of the parties and maintain an even balance. *See Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). For the following reasons, a stay of the government's motion to enter final judgment will promote fair and efficient adjudication.

First, the government's expressed intention not to ask the Court to enter a final judgment or actively consider its motion demonstrates that there is no purpose to joining issue at this time. The Supreme Court is not likely to decide whether to accept certiorari for months, and, if it does, briefing, arguments and ruling on the merits will occupy the better part of 2006. The motion would thus sit unresolved on the Court's docket for almost a year.

Second, Dentsply will be prejudiced if it must prematurely brief the scope of the injunction that the government seeks. The government's final judgment is much more than an attempt to "achieve an effective remedy" for Dentsply's employment of Criterion 6 (D.I. 542 at 4). Rather, it demonstrates a clear intention to restrict Dentsply's business practices in ways that

are not remotely related to the alleged Section 2 violation. For example, the government's injunction demands that Dentsply not terminate a dealer if that dealer's sales decline. US PFJ I(H). The government's proposed decree also prohibits Dentsply from discriminating among dealers in terms of education, marketing promotion or other support without requiring that any such discrimination have any obvious relationship to Criterion 6. *Id.* at I(B)(3). Dentsply's opposition to the scope of the injunction will necessitate a discussion of its potential impact on its ability to compete. Dentsply should not be required to make decisions to reveal aspects of its distribution strategies that support a restricted injunction and thus expose competitively sensitive information, unless it is certain that an injunction should issue.

## CONCLUSION

If an injunction is warranted, it should issue only after the Supreme Court has reached a final decision on Dentsply's petition for a writ of certiorari. For the foregoing reasons, Dentsply requests that the Court grant its motion, and stay all briefing on the government's motion for entry of final judgment.

Respectfully submitted,

Dated: September 22, 2005

*/s/ Christian Douglas Wright*
William D. Johnston (No. 2123)
Christian Douglas Wright (No. 3554)
YOUNG CONAWAY
 STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
cwright@ycst.com
(302) 571-6600

Brian M. Addison
DENTSPLY INTERNATIONAL INC.
Susquehanna Commerce Center
221 West Philadelphia Street
York, PA 17405
(717) 845-7511

Margaret M. Zwisler
Eric J. McCarthy
Charles R. Price
LATHAM & WATKINS LLP
555 Eleventh Street, N.W
Washington, DC 20004
(202) 637-2200

Counsel for Defendant
DENTSPLY INTERNATIONAL INC.

8

## CERTIFICATE OF SERVICE

I, Christian Douglas Wright, Esquire, hereby certify that on September 22, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Colm Connolly, Esquire
>Rudolph Contreras, Esquire
>Office of the United States Attorney
>1007 N. Orange Street, Suite 700
>Wilmington, DE 19899-2046

I further certify that on September 22, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY ELECTRONIC MAIL

>Jon B. Jacobs, Esquire
>Antitrust Division
>U.S. Department of Justice
>1401 H Street, N.W., Suite 4000
>Washington, D.C. 20530

>Christian Douglas Wright (No. 3554)
>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE 19899-0391
>(302) 571-6600
>cwright@ycst.com
>Counsel for Defendant
>DENTSPLY INTERNATIONAL, INC.