UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 99-005 (SLR) |
| | ) | |
| vs. | ) | |
| | ) | |
| DENTSPLY INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' BRIEF IN SUPPORT OF ITS
## RENEWED MOTION TO ENTER FINAL JUDGMENT

Dated: March 21, 2006

COUNSEL FOR PLAINTIFF
UNITED STATES OF AMERICA

COLM CONNOLLY
United States Attorney

PATRICIA HANNIGAN (DSB #2145)
Assistant U.S. Attorney
Office of the United States Attorney
1007 N. Orange Street, Suite 700
Wilmington, DE 19899-2046
(302) 573-6277, ext. 156

JON B. JACOBS
Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 4000
Washington, D.C. 20530
(202) 514-5012

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

I.      Legal Standards for Effective Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

II.     The Proposed Injunctive Relief is Necessary to Achieve an Effective Remedy . . . . . . .   4

III.    The Term of the Final Judgment Should be Ten, not Five, Years . . . . . . . . . . . . . . . . .   6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

F. Hoffman-La Roche Ltd. v. Empagran S.A., 542 U.S. 155 (2004) . . . . . . . . . . . . . . . . . . 2, 4, 8

Ford Motor Co. v. United States, 405 U.S. 562 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 8

International Salt Co. v. United States, 332 U.S. 392 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . 4

National Society of Professional Engineers v. United States, 435 U.S. 679 (1978) . . . . . . . 3, 4, 8

Schine Chain Theatres, Inc. v. United States, 334 U.S. 110 (1948) . . . . . . . . . . . . . . . . . . . . . 3

United States v. Dentsply International, Inc., 399 F.3d 181 (3d Cir. 2005) . . . . . . . . . . *passim*

United States v. Dentsply International, Inc., 277 F. Supp. 2d 387 (D. Del. 2003) . . . . . *passim*

United States v. E. I. du Pont de Nemours & Co., 366 U.S. 316 (1961) . . . . . . . . . . . . . . . 3, 4, 8

United States v. Electronic Payment Services, Inc., 1994 WL 730003 (D. Del. Nov. 14, 1994) . . 7

United States v. Glaxo Group Ltd., 410 U.S. 52 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Microsoft Corp., 253 F.3d 34 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Microsoft Corp., 2002 WL 31654530 (D.D.C. Nov. 12, 2002) . . . . . . . . . . . . 7

United States v. United States Gypsum Co., 340 U.S. 76 (1950) . . . . . . . . . . . . . . . . . . . . . 3, 8

Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969) . . . . . . . . . . . . . . . . . . . 4


**Miscellaneous**

United States Department of Justice, Antitrust Division Manual (3d ed. 1998) . . . . . . . . . . . . 6

## NATURE AND STAGE OF THE PROCEEDING

On January 5, 1999, the United States filed this case against Dentsply International, Inc. ("Dentsply"), to prevent Dentsply from continuing to violate the antitrust laws by denying competing tooth manufacturers access to independent tooth dealers and maintaining its monopoly in the prefabricated artificial tooth market. (D.I. 1). After a bench trial, this Court held that Dentsply's conduct did not violate Section 1 or 2 of the Sherman Act or Section 3 of the Clayton Act, and entered judgment for Dentsply. United States v. Dentsply Int'l, Inc., 277 F. Supp. 2d 387 (D. Del. 2003) ("Dentsply I"). The United States appealed and, on February 24, 2005, the United States Court of Appeals for the Third Circuit reversed, holding that Dentsply's conduct violated Section 2 of the Sherman Act. United States v. Dentsply Int'l, Inc., 399 F.3d 181 (3d Cir. 2005) ("Dentsply II"). On May 26, 2005, the Third Circuit issued its mandate and remanded the case to this Court "for entry of injunctive relief requested by the Government and for such other proceedings as are consistent with [the Third Circuit's] Opinion." (D.I. 534). On September 14, 2005, Dentsply filed with the United States Supreme Court a petition for a writ of certiorari, which was denied on January 9, 2006. (D.I. 550).

On September 28, 2005, this case was referred to Magistrate Judge Thynge to assist the parties in negotiating the terms of the Final Judgment consistent with the Third Circuit's opinion. (D.I. 546). Through those mediation efforts, the parties have reduced the number of issues in dispute to one: the term of the Final Judgment. The United States seeks a ten-year term, the standard length sought by the United States in its antitrust judgments. In its response to this Motion, Dentsply will seek to have the Final Judgment expire five years after it takes effect.

## SUMMARY OF ARGUMENT

Dentsply has violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully maintaining its monopoly power in the artificial tooth market through a lengthy campaign to exclude its closest competitors from the dental laboratory dealers that are necessary to compete effectively in the market. The express purpose of its conduct was exclusionary, and the justification that Dentsply proffered for it at trial was pretextual.

The proposed Final Judgment is an effective remedy for Dentsply's antitrust violation. It prohibits Dentsply from continuing its exclusionary behavior and from replicating it through other means. At the same time, its injunctive provisions are reasonably related to the conduct challenged at trial, and they will not infringe on Dentsply's ability to compete on the merits during the term of the injunction.

A Final Judgment with a ten-year term is necessary to cure the violation and restore competition in the market. Dentsply first enforced its exclusionary policy in 1988 – eighteen years ago. Remedying the effects of that longstanding policy will take a significant amount of time in this market, which, as the Court of Appeals observed, is neither "dynamic" nor "volatile." Dentsply II, 399 F.3d at 196. The government is entitled to particular deference when fashioning injunctive relief to remedy an antitrust violation after trial. It is well settled that once the government establishes an antitrust violation, "all doubts as to the remedy are to be resolved in its favor." F. Hoffman-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 170-71 (2004) (quoting United States v. E. I. du Pont de Nemours & Co., 366 U.S. 316, 334 (1961)). Here, a ten-year decree is necessary to give the market sufficient time to restore the competition that has been lost due to Dentsply's conduct.

## STATEMENT OF FACTS

Dentsply possesses monopoly power in the artificial tooth market. <u>Dentsply II</u>, 399 F.3d at 187-191. Since 1988, Dentsply has terminated, or threatened to terminate, any dealer selling its teeth that has started selling a competing tooth brand. <u>Dentsply I</u>, 277 F. Supp. 2d at 414-18. On several occasions, it has also required dealers to drop some, or all, competing tooth brands in order to become an authorized Dentsply tooth dealer. <u>Id.</u> at 412-14. Dentsply's enforcement of these exclusionary policies has been "longtime, vigorous and successful." <u>Dentsply II</u>, 399 F.3d at 194. The express purpose of these policies was to exclude competitors, and Denstsply's justification was pretextual. <u>Id.</u> at 196-97; <u>Dentsply I</u>, 277 F. Supp. 2d at 419-21, 440-48.

## ARGUMENT

**I.      Legal Standards for Effective Injunctive Relief**

Effective injunctive relief in an antitrust case must not only end the violation, but also "avoid a recurrence of the violation," and others like it, and restore competition in the market. <u>Nat'l Soc'y of Prof'l Eng'rs v. United States</u>, 435 U.S. 679, 697 (1978); <u>Ford Motor Co. v. United States</u>, 405 U.S. 562, 573 (1972); <u>United States v. E. I. du Pont de Nemours & Co.</u>, 366 U.S. 316, 326 (1961). "A trial court upon a finding of a conspiracy in restraint of trade and a monopoly has the duty to compel action by the [defendant] that will, so far as practicable, cure the ill effects of the illegal conduct, and assure the public freedom from its continuance." <u>United States v. United States Gypsum Co.</u>, 340 U.S. 76, 88 (1950); <u>accord</u> <u>United States v. Glaxo Group Ltd.</u>, 410 U.S. 52, 64 (1973); <u>Schine Chain Theatres, Inc. v. United States</u>, 334 U.S. 110, 128-29 (1948).

This Court need not limit its remedy to enjoining the particular conduct that was challenged. It may "restrain acts which are of the same type or class as the unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 132 (1969) (quoting <u>NLRB v. Express Publ'g Co.</u>, 312 U.S. 426, 435 (1941)). The Court may even prohibit otherwise lawful conduct if it "represents a reasonable method of eliminating the consequences of the illegal conduct" or preventing its resumption. <u>Nat'l Soc'y of Prof'l Eng'rs</u>, 435 U.S. at 698. <u>Accord</u> <u>E. I. du Pont de Nemours & Co.</u>, 366 U.S. at 327; <u>Int'l Salt Co. v. United States</u>, 332 U.S. 392, 400 (1947).

The government is entitled to particular deference when seeking injunctive relief to cure an antitrust violation. As the Supreme Court observed in 2004:

> A Government plaintiff, unlike a private plaintiff, must seek to obtain the relief necessary to protect the public from further anticompetitive conduct and to redress anticompetitive harm. And a Government plaintiff has legal authority broad enough to allow it to carry out this mission. . . . "[I]t is well settled that once the Government has successfully borne the considerable burden of establishing a violation of law, all doubts as to the remedy are to be resolved in its favor."

<u>F. Hoffman-La Roche Ltd.</u>, 542 U.S. at 170-71 (2004) (quoting <u>E. I. du Pont de Nemours & Co.</u>, 366 U.S. at 334)). <u>See also</u> <u>Ford Motor Co.</u>, 405 U.S. at 575.

## II.  <u>The Proposed Injunctive Relief is Necessary to Achieve an Effective Remedy</u>

Dentsply's Dealer Criterion 6, stating that "dealers that are recognized as authorized tooth distributors may not add further tooth lines to their product offering," was formally adopted in 1993 and was Dentsply's primary tool for preventing its competitors from building effective dealer networks. <u>Dentsply II</u>, 399 F.3d at 191 ("Dealer Criterion 6 is a solid pillar of harm to competition"); <u>Dentsply I</u>, 277 F. Supp. 2d at 412. The proposed Final Judgment would enjoin

Dentsply from continuing to enforce Dealer Criterion 6 or conditioning the sale of its teeth or

other products to any dealer based on that dealer's sale of competing tooth brands or its

consideration of whether to sell competing brands.  United States' Proposed Final Judgment

("US PFJ") §§ I (A), (B)(1).  Dentsply would also be prohibited from continuing its closely

related practice of coercing dealers to drop some, or all, competing tooth brands in order to

become authorized Dentsply tooth dealers.  Id. § I (A), (C).

Dentsply would be enjoined from retaliating against dealers for selling competing brands,

including by selling teeth or other products to dealers on less favorable terms, providing less

training or other services to them, or steering lab customers away from them and towards other,

more favored dealers.  Id. § I (B)(2)-(6).[1]  The proposed decree also prohibits Dentsply from

offering "market-share discounts," which are price breaks conditioned on a dealer maintaining its

Dentsply tooth sales as a certain percentage of its overall tooth sales.  Id. § I (C).  Such

exclusivity incentive programs could be used by Dentsply to replicate the exclusionary effects of

Dealer Criterion 6.

Within thirty days of the Final Judgment taking effect, Dentsply must distribute its new

dealer criteria to its tooth dealers, along with a copy of the Final Judgment.  Id. § I (D).  If

Dentsply wishes to terminate a tooth dealer, it must give at least sixty days notice, unless

extenuating circumstances justify a shorter time period, and a detailed description of the reasons

for the termination to the United States and to the dealer.  Id. § I (F).  Except in limited

circumstances, Dentsply cannot use the fact that a dealer's sales of Dentsply teeth has declined as

---

[1] In responding to competitive tooth offers, however, Dentsply would be permitted to encourage a lab customer to purchase teeth from a different dealer if its incumbent dealer refused to extend the Dentsply offer to that lab customer.  Id. § I (B)(4).

a basis for termination. Dentsply could terminate such a dealer only if its annual purchases of Dentsply teeth falls below $200,000 or declines by more than 50% compared to its previous year's purchases. Id. § I (F). This provision will permit Dentsply to terminate truly ineffective dealers during the term of the Final Judgment, without deterring other dealers from adding competing tooth brands and substantially growing the sales of those brands.

Finally, Dentsply would be permitted to terminate any dealer as part of a plan to modify its distribution scheme for artificial teeth or other dental products, but prohibited from threatening any dealer with implementation of such a plan to deter that dealer from selling competing tooth brands. Id. § I (E)(1). Ten years ago, Dentsply analyzed whether it should terminate all of its tooth dealers and begin selling teeth directly to labs. Dentsply I, 277 F. Supp. 2d at 404-06. It did not, in part because of the expected competitive reaction from competing tooth manufacturers approaching Dentsply's extensive dealer network. Id. at 405. If Dentsply wishes to sell teeth directly or otherwise modify its distribution system in the next ten years, it would be free to do that as long as its modification plan is not a subterfuge for continuing Dealer Criterion 6; it cannot select dealers for termination based on their sale of competing tooth brands or their consideration of whether to sell such brands. US PFJ § I (E)(1).

## III.   The Term of the Final Judgment Should be Ten, not Five, Years

The proposed Final Judgment expires 10 years after it becomes effective, unless further extended by this Court. Id. § VIII. The ten-year term is the standard length sought by the United States in its antitrust judgments.[2] In cases involving dynamic, volatile industries, the United

---

[2] United States Department of Justice, Antitrust Division Manual IV-54 (3d ed. Feb. 1998) (standard decree requires ten-year term, although longer terms may be appropriate in certain circumstances), available at http://www.usdoj.gov/atr/foia/divisionmanual/ch4.htm

States on occasion has agreed to a shorter length, such as five years. Those are the exceptions, however, because the vast majority of final judgments – even decrees involving relatively dynamic markets – have had terms of 10 years. <u>E.g.</u>, <u>United States v. Electronic Payment Services, Inc.</u>, 1994 WL 730003, at *8 (D. Del. Oct. 14, 1994) (Robinson, J.) (entering decree with 10-year term in case involving automatic teller machine networks).

A shorter term is not justified here. Dentsply's unlawful conduct has continued for eighteen years – almost twice the length of the ten-year injunction sought by the United States. Dentsply first enforced its exclusive dealing policy in 1988, when it terminated Frink Dental of Elk Grove, Illinois after it began selling Ivoclar teeth. <u>Dentsply I</u>, 277 F. Supp. 2d at 413. Dentsply's enforcement of its exclusionary policies has been "longtime, vigorous and successful." <u>Dentsply II</u>, 399 F.3d at 194. Dentsply has not given the United States, and cannot give the Court, a sound reason to believe that in just five years the effects of Dentsply's anticompetitive conduct will have been remedied.

Due to the stagnant nature of the artificial tooth market, a ten-year decree is necessary to give the market sufficient time to ameliorate Dentsply's longstanding violation. The Court of Appeals, contrasting this case to the government's earlier antitrust litigation against Microsoft, noted that this "case does not involve a dynamic, volatile market like that in <u>Microsoft</u> . . . . The economic impact of [Dentsply's] exclusive dealing arrangement is amplified in the stagnant, no growth context of the artificial tooth field." <u>Dentsply II</u>, 399 F.3d at 196.[3] Given the slow pace

---

[3] In <u>Microsoft</u>, the United States consented to a five-year decree to settle that case after trial. <u>United States v. Microsoft Corp.</u>, 2002 WL 31654530, at *12 (D.D.C. Nov. 12, 2002). The computer software industry, however, is the quintessential dynamic, volatile market. <u>See United States v. Microsoft Corp.</u>, 253 F.3d 34, 49 (D.C. Cir. 2001) (en banc) (per curiam) ("six years seems like an eternity in the computer industry").

of change, after five years Dentsply will likely retain sufficient market power to reimpose Dealer

Criterion 6 or some other exclusionary policy. A key objective in fashioning a remedy in

antitrust cases is to "avoid a recurrence of the violation." Nat'l Soc'y of Prof'l Eng'rs, 435 U.S.

at 697; see also United States Gypsum Co., 340 U.S. at 88 ("assure the public freedom from its

continuance"). Entering a ten-year injunction serves that purpose by lessening the risk that

Dentsply will be able to exclude its competitors from the dealer network once the injunction is

lifted.

Dentsply cannot reasonably assert, as a reason for shortening the Final Judgment's

duration to five years, that this is a draconian injunction imposing severe restrictions on its ability

to compete. Through the mediation process, the United States agreed to narrow the scope of

some of the injunctive provisions. Some provisions were modified to clarify their meaning and

thereby facilitate Dentsply's compliance with them. Other provisions were added to permit

Dentsply to engage in certain conduct important to its business. As a result, the proposed Final

Judgment is reasonable in scope, enjoining conduct closely related to that challenged at trial.

By 1961, it was already "well settled" that the government is entitled to the benefit of "all

doubts" in antitrust remedy proceedings. E.I. du Pont de Nemours & Co., 366 U.S. at 334. That

principle was reaffirmed by the Supreme Court in 1972 and again in 2004. Ford Motor Co., 405

U.S. at 575; F. Hoffman-La Roche Ltd., 542 U.S. at 170-71. Dentsply has deliberately

maintained its monopoly power for eighteen years. It defended its conduct at trial with a

pretextual business justification. There is little doubt that a ten-year decree is justified in this

case.

## CONCLUSION

For the foregoing reasons, this Court should enter the United States' proposed Final

Judgment.


Dated: March 21, 2006                        Respectfully submitted,

                                             COLM CONNOLLY
                                             United States Attorney

                                             _____/S/_____
                                             PATRICIA HANNIGAN (DSB #2145)
                                             Assistant U.S. Attorney
                                             Office of the United States Attorney
                                             1007 N. Orange Street, Suite 700
                                             Wilmington, DE 19899-2046
                                             (302) 573-6277, ext. 156


                                             _____/S/_____
                                             JON B. JACOBS
                                             Antitrust Division
                                             U.S. Department of Justice
                                             1401 H Street, N.W., Suite 4000
                                             Washington, D.C.  20530
                                             (202) 514-5012