# EXHIBIT 1

E. Negotiating and Entering Consent Decrees

In general, adequate relief in a civil antitrust case is relief that will (1) stop the illegal practices alleged in the complaint, (2) prevent their renewal, and (3) restore competition to the state that would have existed had the violation not occurred. Normally, the government is entitled to any relief that is reasonable and necessary to accomplish these ends. While the scope of relief obtained in prior antitrust cases may be viewed as precedent, the theory behind equitable relief is that it should be fashioned to fit the particular facts of the case at issue.

It is often possible to obtain effective relief without taking the case to trial. This Section describes the procedures used by the Antitrust Division in negotiating and entering civil consent judgments under the Antitrust Procedures and Penalties Act of 1974, 15 U.S.C. § 16 ("APPA," "Act," or "Tunney Act").

1. Antitrust Procedures and Penalties Act

The APPA was enacted on December 21, 1974. The APPA subjects the Division's consent judgments to public scrutiny and comment. The Division must ensure complete compliance with the requirements of the APPA.

a. The Competitive Impact Statement

The first significant requirement of the APPA is that the government file with the court of a Competitive Impact Statement ("CIS") at the time the proposed consent judgment is filed. This document must be self-contained, setting forth the information necessary to enable the court and the public to evaluate the proposed judgment in light of the government's case. Its object is to explain why the proposed judgment is appropriate under the circumstances and why it is in the public interest. Because the CIS is directed to the public, as well as to the court, it should be written in a narrative style that avoids technical jargon. As a general rule, the CIS should not use extensive verbatim quotations from the complaint and judgment. Rather, care should be taken to make the CIS as understandable and persuasive as possible.

The CIS is the Division's explanation of its case, the judgment, and the circumstances surrounding the judgment. Therefore, it should not be the subject of discussion or negotiation with defense counsel, and defense counsel will not be permitted to review the CIS prior to its filing with the court unless the Assistant Attorney General approves an exception to this procedure.

The APPA requires that the CIS "recite" certain topics, and most CISs filed

recently are organized according to the statutory requirements: (1) the nature and purpose of the proceeding; (2) a description of the practices giving rise to the alleged violation; (3) an explanation of the proposed final judgment; (4) the remedies available to potential private litigants; (5) a description of the procedures available for modification of the judgment; and (6) the alternatives to the proposed final judgment considered by the Division. Although the statute does not specify that the CIS must discuss determinative documents, a seventh section--a list of determinative documents--is usually added to the CIS as this is a convenient place to publicly state what the determinative documents are, or more commonly, that there are no determinative documents. See Massachusetts School of Law v. United States, 118 F.3d 784-85 (D.C. Cir. 1997) (discussing what qualifies as a determinative document). Some CISs have also discussed the standard of judicial review under the Tunney Act; this discussion, however, is not required by the APPA and may sometimes be more appropriate for inclusion in the motion for entry of the judgment that is typically filed after the notice and comment period has expired.

The CIS's description of the nature and purpose of the proceeding and the practices or events giving rise to the alleged violation must go beyond the allegations in the complaint. The CIS should describe the defendants, the trade and commerce involved, and the challenged activity in sufficient detail to convey the essence of the alleged violation. For instance, in a merger case, the industry, the parties' relationship to the industry and to each other, and the theory of the violation should be explained. In a non-merger case, the CIS should make clear what the defendant did and explain the resulting competitive harm.

The CIS should describe the proposed relief in a manner that the public will understand. All material provisions of the proposed judgment should be discussed. The reasoning behind the Division's acceptance of the proposed relief and the anticipated competitive effect of the relief must also be set forth. Although this discussion should be persuasive, it should be candid as well.

The CIS must also describe and evaluate alternative forms of relief actually considered. This does not mean that negotiated language changes must be discussed unless such changes significantly alter the judgment's scope. Similarly, defendant's proposals which were unacceptable need not be discussed, unless they would have provided significantly broader relief than that ultimately accepted. Even if a proposal met either of these two criteria, in general it would not qualify as an alternative form of relief actually considered unless it were (a) in the prayer of the complaint, (b) submitted to defense counsel in writing during negotiations, or (c) submitted to the Assistant Attorney General in final form for approval. In rare instances a seriously considered alternative that does not meet these three criteria may exist (i.e., where extended negotiations were conducted with the

defendant concerning a specific relief proposal). In such cases, staff should consult with the Chief and appropriate Director whether it is appropriate to include a discussion of that proposal in the CIS. The discussion of alternatives and the Division's reasons for not adopting them should be candid. The court must approve the relief accepted by the government if it is within the "reaches of the public interest." United States v. Microsoft, 56 F.3d 1448, 1461-62 (D.C. Cir. 1995) (citations omitted).

The CIS must also discuss the remedies available to potential private plaintiffs. This discussion will be brief and in most instances will be standardized.

### b. Materials and Documents

The APPA requires the Division to file with any proposed consent judgment all materials and documents considered determinative in formulating the judgment. This is to be distinguished from materials and documents supportive of the litigation. See Massachusetts School of Law v. United States, 118 F.3d 784-85 (D.C. Cir. 1997). In most cases, the relief is determined by the sum total of the Division's investigation and evidence. There will seldom be any particular document or documents that influenced the formulation or rejection of a particular item of relief. The materials and documents to be filed, if any, might consist of submissions by the defendants or other persons, including other government agencies or experts' studies, that were determinative in formulating the judgment, or contracts that embody the terms of a divestiture. Staff should consult with the appropriate Director of Enforcement if there is any question about interpreting this requirement in a given case.

### c. Publications in the Federal Register

The APPA requires that the proposed judgment and the CIS be published in the Federal Register "at least 60 days prior to the effective date of such judgment." There is, however, at least a five-working day delay between submission of materials to the Federal Register and their publication in it. Since the Division does not request publication until the filings are made with the court, there consequently will usually be at least an additional five days added to the 60-day waiting period.

The APPA also requires that before the judgment can be entered, the Division must publish in the Federal Register any public comments the Division receives about the proposed judgment during the notice and comment period and the Division's reply to them. In general, it is preferable to answer comments by a single response, filed and published, if possible, before the expiration of the

waiting period. If meeting that target date is not practicable because of, for example, the actual or possible receipt of comments just prior to the close of the waiting period, the Division should file and publish all comments and one unified response as promptly as possible after the period has expired. The office of the appropriate Director will arrange for the necessary <u>Federal Register</u> publications.

### d. Newspaper Publication

The newspaper notices required by the APPA, which summarize the proposed judgment and CIS and outline procedures available for the submission of comments, must begin appearing at least 60 days prior to the effective date of the judgment and must appear in the legal notice section. They should be brief--if at all possible limited to 30 typewritten lines. Such notices usually will be standardized, and a staff attorney should obtain copies of recent notices from either the Division's Work Product Document Bank or the appropriate Special Assistant.

The office of the appropriate Director will make arrangements for placing the newspaper notice in a newspaper of general circulation in the District of Columbia and in a newspaper of general circulation in the district where the action was filed. The APPA requires such publication in every case. The office of the appropriate Director will also arrange for any additional publication that the court may order. That office will obtain the necessary affidavits of publication that will provide the basis for the Division to certify to the court that such publication has occurred.

Because newspapers occasionally fail to publish a notice or do so inaccurately, the staff attorneys should check the text of the copy of the notice that the office of the appropriate Director will send them from the newspaper in which publication is made, to assure the correctness of the notice. If the newspaper notice is incorrect, the office of the Director should be notified immediately to take corrective action.

As noted above, occasionally, the court may require additional newspaper publication beyond the minimum requirements of the APPA, unaware of the cost this entails. Where the cost of the additional publication appears to be excessive, the staff should request a delay until it can ascertain the costs and, if possible, establish an alternative publication schedule that will reduce the cost but meet the court's objective.

### 2. Internal Procedures

It is the general practice of the Division not to initiate settlement discussions. Once defense counsel has broached the issue, however, the component to which

the case is assigned is free to prepare a proposed first draft of a judgment if its Chief believes it is advisable for the Government to make a proposal.

The Chief and staff must submit to the appropriate Director of Enforcement any written settlement proposal they want to submit to defense counsel. Under no circumstances should a draft settlement proposal be submitted to the defendants before the appropriate Director and Deputy Assistant Attorney General has had an opportunity to review the proposal and the proposed case.

Judgment negotiations are conducted by the trial staff under the immediate supervision of the Chief. In some cases, the negotiations will be fairly straightforward and follow the general parameters of the original written settlement proposal. Where negotiations raise significant issues that were not addressed in drafting the original proposal, however, the appropriate Director should be further consulted. The Chief should provide a summary of the new issues involved, describe any areas of disagreement, and recommend the appropriate scope of relief.

The staff should make clear to defense counsel that final authority to approve the judgment rests with the Assistant Attorney General, and that pursuant to the APPA judgment is subject to withdrawal or change at any time prior to its formal entry by the court. Defense counsel should also be advised that Section 2(g) of the APPA requires each defendant to file a description of specified oral and written communications with the government concerning the decree. Defense counsel should also be informed that they will not be permitted to review court papers, other than the proposed judgment, prior to filing with the court.

In preparing its proposed draft decree, staff should consult the Division's Work Product Document Bank for form and language used by the Division in its recent decrees. Once the staff's proposed draft decree has been approved, the staff should conduct negotiations consistent with the overall plan of relief contained in the approved draft. Staff may consult informally with the appropriate Director to determine current Division practice and alternative relief proposals.

With regard both to the preparation of proposed draft decrees by staff as well as to decree proposals that may be made by defendants, note that the Division's standard decree language requires that the consent decree expire on the tenth anniversary of its entry by the court. The staff should not negotiate any decree of less than 10 years' duration, although decrees of longer than 10 years may be appropriate in certain circumstances.

When the proposed final version of the consent judgment is submitted for

approval, the Chief will submit a recommendation to the appropriate Director of Enforcement. The recommendation should include all necessary papers, including the stipulation, the decree, the competitive impact statement, the <u>Federal Register</u> and newspaper notices, and the proposed press release. The <u>Federal Register</u> notice should be prepared for the signature of the appropriate Director of Enforcement. All papers should be forwarded for review with the recommended consent judgment.

The Director's office must be notified at least 24 hours in advance of filing the proposed decree and related papers with the court so that the press release may be finalized for issuance. At the time of filing the judgment with the court, the requirements of the APPA and the procedures for complying with the Act should be explained to the court orally if feasible and otherwise by letter with a copy to counsel, if local practice permits. It should be emphasized that the waiting period may exceed 60 days because of the publication requirements and the possibility of receiving last-minute comments and that the judgment cannot validly be entered before the comment period is complete. The court should not sign and enter the decree until the requirements of the APPA have been met. The staff will file a certificate of compliance when the requirements are met. The office of the appropriate Director must be called immediately after the case has been filed and provided with the name of the judge and the file number. In addition, the office of the appropriate Director must be called as soon as the decree has been entered.