UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 99-005 (SLR) |
| | ) | |
| vs. | ) | |
| | ) | **REDACTED** |
| DENTSPLY INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>UNITED STATES' REPLY TO DENTSPLY'S BRIEF IN OPPOSITION TO RENEWED MOTION TO ENTER FINAL JUDGMENT</u>

Dated: April 17, 2006

COUNSEL FOR PLAINTIFF
UNITED STATES OF AMERICA

COLM F. CONNOLLY
United States Attorney

PATRICIA C. HANNIGAN (DSB #2145)
Assistant U.S. Attorney
Office of the United States Attorney
1007 N. Orange Street, Suite 700
Wilmington, DE 19899-2046
(302) 573-6277, ext. 156

JON B. JACOBS
Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 4000
Washington, DC 20530
(202) 514-5012

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     A ten-year injunction is necessary to restore competition in this market. . . . . . . . . . . . . 1

II.    The relatively few consent decrees with five-year terms in the past 11 years do not justify a shorter term in this case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   A ten-year term will not impose undue burdens on this Court. . . . . . . . . . . . . . . . . . . 6

IV.    Dentsply's proposal for a relaxed modification standard should be rejected. . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page**

F. Hoffman-La Roche Ltd. v. Empagran S.A., 542 U.S. 155 (2004) . . . . . . . . . . . . . . . . . . .  5

Ford Motor Co. v. United States, 405 U.S. 562 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

Local 167 of Int'l Brotherhood of Teamsters v. United States, 291 U.S. 293 (1934) . . . . . . .  6

Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679 (1978) . . . . . . . . . . . . . . . . . . . .  1

Oregon v. Mulkey, 1997 WL 599410 (D. Or. June 16, 1997) . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

United States v. Agri-Mark, Inc., 1981 WL 2057 (D. Vt. Apr. 1, 1981) . . . . . . . . . . . . . . . .  4

United States v. Bausch & Lomb Optical Co., 321 U.S. 707 (1944) . . . . . . . . . . . . . . . . . . . .  5

United States v. E. I. du Pont de Nemours & Co., 366 U.S. 316 (1961) . . . . . . . . . . . . . . . .  5

United States v. Delta Dental Plan of Arizona, 1995 WL 454769 (D. Ariz. May 19, 1995) . . 4, 6

United States v. Dentsply Int'l, Inc., 399 F.3d 181 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 1, 2

United States v. Dentsply Int'l, Inc., 277 F. Supp. 2d 387 (D. Del. 2003) . . . . . . . . . . . . . . . 2, 3

United States v. Microsoft Corp., 2002 WL 31654530 (D.D.C. Nov. 12, 2002) . . . . . . . . . . 4, 6

United States v. Motorola, Inc., 1995 WL 866794 (D.D.C. July 25, 1995) . . . . . . . . . . . . . . .  7

United States v. Oregon Dental Service, 1995 WL 481363 (N.D. Cal. July 14, 1995) . . . . . . 4, 6

United States v. Topa Equities, Ltd., 1995 WL 481368 (D. V.I. July 14, 1995) . . . . . . . . . . . 4, 6

**Miscellaneous**

Antitrust Division Manual IV-51 (3d ed. Feb. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Antitrust Case Filings, http://www.usdoj.gov/atr/cases.html . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Oregon v. Mulkey, Competitive Impact Statement, 62 Fed. Reg. 8267 (Feb. 24, 1997) . . . . . .  6

Press Release, Dentsply International, Inc. Reports on Status of Antitrust Case Decision,
available at http://home.businesswire.com/portal/site/dentsply/ (May 23, 2005) . . . . . . . . . . .  3

United States Department of Justice & Federal Trade Commission, Statements of Antitrust
Enforcement Policy in Health Care (Aug. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

United States v. Microsoft Corp., Response of the United States to Public Comments on the
Revised Proposed Final Judgment, 2002 WL 32151978 (D.D.C. Feb. 27, 2002) . . . . . . . . . .  2

United States v. Motorola, Inc. & Nextel Communications, Inc., Proposed Final Judgment and
Competitive Impact Statement, 59 Fed. Reg. 55705 (Nov. 8, 1994) . . . . . . . . . . . . . . . . . . . . 7, 8

## ARGUMENT

**I.     A ten-year injunction is necessary to restore competition in this market.**

An injunction against Dentsply's exclusionary conduct must be in place sufficiently long

to "eliminat[e] the consequences of the illegal conduct" and ensure that competition is restored to

this market. Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 698 (1978); see also

Ford Motor Co. v. United States, 405 U.S. 562, 577-78 (1972) ("[a]ntitrust relief should unfetter

a market from anticompetitive conduct and 'pry open to competition a market that has been

closed by defendants' illegal restraints'") (quoting Int'l Salt Co. v. United States, 332 U.S. 392,

401 (1947)).  Two factors are particularly relevant in assessing the necessary length of the

injunction: how quickly competitive conditions are likely to change once that conduct is

enjoined; and how long Dentsply's illegal conduct has persisted in the market.

Dentsply does not attempt to argue that the artificial tooth market is so dynamic and

volatile that the effects of its exclusionary conduct will be remedied within five years.  As the

Court of Appeals observed, the "economic impact of an exclusive dealing arrangement is

amplified in the stagnant, no growth context" of this industry.  United States v. Dentsply Int'l,

Inc., 399 F.3d 181, 196 (3d Cir. 2005) ("Dentsply II").  Dentsply does vaguely assert that its

"tooth business has changed dramatically over the past several years," but does not support this

conclusory statement with any facts or explanation.  Dentsply's Brief in Opposition to Plaintiff's

Motion to Enter Final Judgment ("DS Opp.") at 7.[1]

---

[1] In that same sentence, Dentsply contends that it "must be able to continue to change in order to compete effectively." Id.  Yet it does not explain how any of the injunction's provisions prevent it from competing effectively in the market.  Indeed, many of the provisions that were added to the proposed Final Judgment during mediation addressed Dentsply's perceived need to engage in certain conduct important to its business.

Instead, Dentsply's principal argument for why a five-year injunction is sufficient to address the competitive harm of its exclusionary conduct is that it has already effectively operated under the key terms of the proposed Final Judgment for more than ten years.  DS Opp. at 1-2, 6, 8.  Even assuming the purported length of its unlawful conduct is relevant, Dentsply argues that conduct stopped in the "early to mid-1990s," when it last enforced Dealer Criterion 6 by terminating a tooth dealer for taking on a competitive tooth line.  Id.[2]  This astonishing claim is flatly inconsistent with the opinion of the Court of Appeals, this Court's findings of fact, and the trial testimony of Dentsply's own high-level executives.

As the Court of Appeals concluded, Dentsply's enforcement of its exclusionary policies has been "longtime, vigorous and successful."  Dentsply II, 399 F.3d at 194.  Dentsply's enforcement of Dealer Criterion 6 did not stop in the mid-1990s.  In the spring of 2000, Dentsply enforced Dealer Criterion 6 against Marcus Dental, a Dentsply dealer in Minneapolis, when it took on the Kenson tooth line because Dentsply was having problems supplying an adequate stock of teeth to its dealers.  United States v. Dentsply Int'l, Inc., 277 F. Supp. 2d 387, 417 (D. Del. 2003) ("Dentsply I").  In the fall of 2000, Dentsply reminded Thompson Dental about Dealer Criterion 6 after it learned that Thompson Dental was exploring taking on competitive tooth lines.  Id. at 417-18.  In 2001, Dentsply told Patterson Dental, its second-largest dealer, that

---

[2]  Contrary to Dentsply's claim (DS Opp. at 5-6), the United States did not reject the relevance of the length of a defendant's illegal conduct in the Microsoft case.  Dentsply quotes selectively from Paragraph 412 of the Response to Public Comments in that case, omitting two references in that very same paragraph to the fact that the computer software market was "characterized by rapid technological change" and was "an evolving market."  Given that rapid change, the government concluded that the five-year term of the decree, "particularly as augmented by a potential two-year extension, is long enough."  United States v. Microsoft Corp., Response of the United States to Public Comments on the Revised Proposed Final Judgment, No. 98-1232, 2002 WL 32151978 at ¶ 412 (D.D.C. Feb. 27, 2002).

it would enforce Dealer Criterion 6 and terminate Patterson Dental as a tooth dealer if Patterson

did not drop the Kenson tooth line from a newly-acquired branch in Los Angeles. Id. at 418. In

that instance, Dentsply continued to "monitor" and "keep tabs" on Patterson's compliance

because of its concern that Patterson is "fairly decentralized and they don't always tell their

corporate offices what they are doing." Docket Index ("D.I.") 416 at 2290 (trial testimony of

Steve Jenson, Dentsply's Trubyte Division General Manager). And sometime after December

1999, after lengthy negotiations with Dentsply, Darby Dental complied with Dealer Criterion 6

and dropped its Vita tooth stock from its New York branch. Dentsply I, 277 F. Supp. 2d at 418.[3]

This Court's findings detail a consistent pattern of Dentsply enforcement activity from

1988 (when Dentsply terminated Frink Dental) to 2001, the year before the trial was held. Id. at

413-18. During trial in 2002, Dentsply's top executives testified quite clearly that [REDACTED]


D.I. 416 at 2290, 2306 (testimony of Trubyte Division's General

Manager); D.I. 446 at 3508 (Dentsply's Chief Executive Officer); D.I. 445 at 2703 (former

Trubyte Division General Manager). Since trial, Dentsply issued a press release about this case

which, at a minimum, implied that its exclusive dealing policy is still in effect. It certainly never

announced its abandonment or nonenforcement.[4] Dentsply has never rescinded Dealer Criterion

---

[3] This Court found other post-1995 examples as well. During the 2000 to 2002 time period, Norman Weinstock of Zahn Dental, Dentsply's largest dealer, refused to sell at least three competing brands of teeth (Enigma, Heraeus Kulzer, and Vita) because he understood very clearly that he would lose his substantial Dentsply tooth business if he sold those other brands. Dentsply I, 277 F. Supp. 2d at 416.

[4] In a May 23, 2005 press release regarding the Third Circuit's denial of its rehearing petition, Dentsply wrote, "[i]f the decision of the Third Circuit stands, Dentsply's Trubyte division will no longer be able to require dealers that carry its tooth lines to not carry competitive tooth lines." Press Release, Dentsply International, Inc. Reports on Status of Antitrust Case

6, which is why the proposed Final Judgment requires it to do so and then distribute its revised

dealer criteria to its tooth dealers so they are aware of its recission. United States' Proposed

Final Judgment ("USPFJ") § I (D). Dentsply now attempts to rewrite this well-documented

history, apparently claiming that it did not mean what it said when it told dealers that they would

be terminated if they sold competing brands of teeth. That claim is as pretextual as the business

justification Dentsply offered for its conduct at trial, and this Court should reject it.

**II.    The relatively few consent decrees with five-year terms in the past 11 years do not
justify a shorter term in this case.**

Dentsply cites to five cases since 1995 in which the United States agreed to final

judgments with five-year terms. See United States v. Microsoft Corp., No. 98-1232, 2002 WL

31654530 (D.D.C. Nov. 12, 2002); Oregon v. Mulkey, No. 97 234, 1997 WL 599410 (D. Or.

June 16, 1997); United States v. Delta Dental Plan of Arizona, Inc., No. 94-1793, 1995 WL

454769 (D. Ariz. May 19, 1995); United States v. Oregon Dental Service, No. C95 1211, 1995

WL 481363 (N.D. Cal. July 14, 1995); United States v. Topa Equities, Ltd., No. 1994-179, 1995

WL 481368 (D. V.I. July 14, 1995).[5] Dentsply argues that these cases demonstrate that ten-year

terms in cases such as this one are not "standard." DS Opp. at 5.

But the cases in which the government has agreed to five-year injunctions are relatively

rare compared to the cases with ten-year decrees. A review of the case filings on the Antitrust

---

Decision, available at http://home.businesswire.com/portal/site/dentsply/ (May 23, 2005)
(emphasis added).

   [5] Dentsply also cites United States v. Agri-Mark, Inc., No. 80-174, 1981 WL 2057, at *5
(D. Vt. Apr. 1, 1981), a case with a twenty-year agreed-upon term, as an example of a five-year
decree. Only one provision, requiring notice to the government of certain acquisitions, had a five
year term. Id. at *3. The rest of the decree, which addressed pricing, purchases, supply
agreements, debt repayments, and corporate governance, was in force for twenty years. Id. at *5.

Division's web site shows a total of 143 cases since 1995 in which final judgments have been entered against defendants. Of these, 127 – or 89% – had terms of 10 years.[6]  By any count, it is clear that ten years is the standard length sought by the United States in its antitrust cases.

The more pertinent issue, however, is not whether ten years is the standard length but whether it is appropriate in this case.  Dentsply is correct that the proper standard to apply is the one set forth in the Antitrust Division's Manual: equitable relief to remedy an antitrust violation "should be fashioned to fit the particular facts of the case at issue."  <u>Antitrust Division Manual</u> IV-51 (3d ed. Feb. 1998) (quoted at DS Opp. at 3).  The United States has applied that standard in its past cases, and it did so here.  In this case, the particular facts at issue clearly justify a ten-year term, given Dentsply's longstanding unlawful conduct and the slow pace of change in the artificial tooth market.  Although this Court is not bound by the <u>Antitrust Manual</u>, the government is entitled to deference regarding the scope of the appropriate remedy.  Now that it has "successfully borne the considerable burden of establishing a violation of the law, all doubts as to the remedy are to be resolved in its favor."  <u>United States v. E. I. du Pont de Nemours & Co.</u>, 366 U.S. 316, 334 (1961); <u>see also</u> <u>F. Hoffman-La Roche Ltd. v. Empagran S.A.</u>, 542 U.S. 155, 170-71 (2004); <u>Ford Motor Co.</u>, 405 U.S. at 575.  Dentsply tries to distinguish these clear pronouncements by the Supreme Court by claiming such deference applies only in merger cases under Section 7 of the Clayton Act (DS Opp. at 7), but that is clearly not true.[7]

---

[6]  <u>See</u> Antitrust Case Filings, http://www.usdoj.gov/atr/cases.html (last visited Apr. 10, 2006).  The United States will provide the underlying data upon this Court's request.

[7]  <u>See e.g.</u>, <u>United States v. Bausch & Lomb Optical Co.</u>, 321 U.S. 707, 726 (1944) (in case challenging distribution arrangement under Sections 1 and 3 of the Sherman Act, "test is whether or not the required action reasonably tends to dissipate the restraints and prevent evasions.  Doubts are to 'be resolved in favor of the government and against the conspirators'")

None of the five cases cited by Dentsply suggest that a term of anything less than ten years is justified here. The United States negotiated these decrees, including the five-year term, in light of the particular facts and circumstances of those matters. Three of them, for example, arose in rapidly changing industries.[8] As Dentsply notes, the other two, involving commercial crab fishing (Oregon v. Mulkey) and liquor wholesaling (Topa Equities), did not. But while the volatility of the industry is an important factor, other factors might also justify a shorter term. In those cases, for example, the effects of the defendants' anticompetitive conduct was much more limited by time and geographic scope than the effects resulting from Dentsply's conduct.[9]

**III.     A ten-year term will not impose undue burdens on this Court.**

Dentsply implies that a ten-year term may turn this Court into the "regulating authority in the artificial tooth market." DS Opp. at 8. But the very nature of the injunctive provisions in the

---

(quoting Local 167 of Int'l Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America v. United States, 291 U.S. 293, 299 (1934)). The Local 167 case, similarly, was a non-merger case challenging conduct under Sections 1 and 2 of the Sherman Act. 291 U.S. at 294.

[8] Microsoft Corp., 2002 WL 31654530 (D.D.C. Nov. 12, 2002) (computer software); Delta Dental Plan of Arizona, 1995 WL 454769 (D. Ariz. May 19, 1995) (dental insurance coverage); Oregon Dental Service, 1995 WL 481363 (N.D. Cal. July 14, 1995) (same). Both of the dental insurance coverage cases were brought in 1995, a time period when the government issued additional guidance to health care providers such as dentists because health care markets were undergoing "tremendous change." United States Department of Justice & Federal Trade Commission, Statements of Antitrust Enforcement Policy in Health Care 1-2 (Aug. 1996) (stating that 1993 was a "time of tremendous change" and that since 1994, "health care markets have continued to evolve").

[9] In Oregon v. Mulkey, for example, the challenged conduct began in December 1995 and ended the very next month, compared to Dentsply's lengthy, 18-year pattern of exclusionary conduct. Competitive Impact Statement, 62 Fed. Reg. 8267, 8272 (Feb. 24, 1997). And in Topa Equities, the relevant geographic market was local, limited to the U.S. Virgin Islands, and the relevant market, liquor wholesaling, is uniquely regulated at a local or state level. 1995 WL 481368.

proposed Final Judgment, and Dentsply's consent to all of the provisions other than the length, demonstrate that this is not a real risk.

This is not a "regulatory" decree. The United States, not the Court, will receive annual certifications from Dentsply and will monitor its compliance. This Court will retain jurisdiction to enable either party to apply for further orders as necessary to carry out or construe the judgment's provisions, to enforce compliance, and to punish any violations of it. United States' Proposed Final Judgment § VII. After six months of mediation, in which these provisions were reviewed and edited to ensure that both parties understood their meaning, there should be very little need for this Court to construe or interpret the decree.

## IV.    Dentsply's proposal for a relaxed modification standard should be rejected.

In the alternative, in the event this Court imposes a ten-year term, Dentsply offers language used in a 1995 case involving specialized mobile radio ("SMR") service that would permit either party to seek modification after five years under a slightly relaxed legal standard. DS Opp. at 8 (quoting United States v. Motorola, Inc., No. 94-2331, 1995 WL 866794, at *6 (D.D.C. July 25, 1995)). In that case, the United States challenged an agreement under which Nextel would acquire much of Motorola's SMR business as a violation of Section 7 of the Clayton Act. In the consent decree settling the matter before trial, the provision Dentsply cites provided that a party seeking modification could rely upon events that were known and foreseeable at the time of entry of the proposed Final Judgment, provided the grounds for such modification at common law were otherwise met. United States v. Motorola, Inc. & Nextel Communications, Inc., Proposed Final Judgment and Competitive Impact Statement, 59 Fed. Reg. 55705, 55711 (Nov. 8, 1994). In that case, the "parties contemplate that a complete

extinguishment of Motorola's relationship with Nextel would be a significant changed circumstance under the decree." Id.

Dentsply provides no reason why such a provision is necessary or desirable in this case.[10] The Motorola case was very different from this one, in that the likelihood of significantly changed circumstances after five years was obvious given the contemplated introduction of new SMR services in the future.[11]  In this case, the artificial tooth market changes very slowly, so the likelihood of significant change is far more speculative.  Given that Dentsply has failed to justify including this provision in the proposed Final Judgment, this Court should reject it.

---

[10] Dentsply has not identified what changes are known and foreseeable that would require this change to the final judgment.  In Motorola, the changes were expressed in the court record. United States v. Motorola, Inc. & Nextel Communications, Inc., Proposed Final Judgment and Competitive Impact Statement, 59 Fed. Reg. 55705, 55710 (Nov. 8, 1994).

[11] SMR service (a kind of dispatch service) in the 220 MHz bandwidth was contemplated to be a substitute for the disputed bandwidths in the future.  Id. at 55709.

## CONCLUSION

For the foregoing reasons, this Court should enter the United States' proposed Final

Judgment with a ten-year term

Dated: April 17, 2006

                                        Respectfully submitted,

                                        COLM F. CONNOLLY
                                        United States Attorney

                                          _____/S/_____
                                        PATRICIA C. HANNIGAN (DSB #2145)
                                        Assistant U.S. Attorney
                                        Office of the United States Attorney
                                        1007 N. Orange Street, Suite 700
                                        Wilmington, DE 19899-2046
                                        (302) 573-6277, ext. 156

                                          _____/S/_____
                                        JON B. JACOBS
                                        Antitrust Division
                                        U.S. Department of Justice
                                        1401 H Street, N.W., Suite 4000
                                        Washington, DC 20530
                                        (202) 514-5012

# CERTIFICATE OF SERVICE

We hereby certify that copies of the United States' Reply to Dentsply's Brief in

Opposition to Renewed Motion to Enter Final Judgment was served this 17th day of April 2006,

upon counsel for defendant Dentsply International, Inc. as indicated below:

<u>By hand delivery and electronic mail</u>
Margaret M. Zwisler, Esq.
Eric J. McCarthy, Esq.
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304

<u>By first-class mail and electronic mail</u>
William D. Johnston, Esq.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

COLM F. CONNOLLY
United States Attorney

_____/S/_____
PATRICIA C. HANNIGAN (DSB #2145)
Assistant U.S. Attorney
Office of the United States Attorney
1007 N. Orange Street, Suite 700
Wilmington, DE 19899-2046
(302) 573-6277, ext. 156

_____/S/_____
JON B. JACOBS
Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 4000
Washington, DC 20530