## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) C.A. No 99-005-SLR |
| | ) |
| DENTSPLY INTERNATIONAL, INC., | ) |
| | ) |
| Defendant | ) |
| | ) |

## DECLARATION OF ADAM STEINFELD IN SUPPORT OF THIRD PARTY NOWAK DENTAL SUPPLIES INC'S UNOPPOSED MOTION TO INTERVENE FOR THE SOLE PURPOSE OF MODIFYING THE STIPULATED PROTECTIVE ORDER

I, Adam Steinfeld, hereby declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1.     I am an attorney at law duly licensed to practice before all courts in the State of New York, and I am a member of the law firm Garwin, Gerstein & Fisher, LLP, attorneys of record for plaintiff Nowak in the action entitled *Nowak Dental Supplies, Inc. v. Dentsply International, Inc.*, 1:07-cv-01799 (CCC) (M.D. Pa.) (the "*Nowak*" action) now pending in the Middle District of Pennsylvania. Based on this representation, I am familiar with the events, pleadings, and discovery in the Nowak action, and, if called upon as a witness, I could and would testify competently to the matters stated herein of my own personal knowledge. I submit this declaration in support of Nowak's Unopposed Motion To Intervene For The Sole Purpose Of Modifying The Stipulated Protective Order.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the Stipulated Protective Order entered in the above-captioned action, entered by the Court as Docket Item number 92.

2.     Attached hereto as Exhibit 2 is a true and correct copy of the Court's order modifying the Stipulated Protective Order entered in the above-captioned action on December 13, 2007, obtained from the Court's docket and entered by the Court as Docket Item number 570.

3.     Attached hereto as Exhibit 3 is a true and correct copy of the complaint filed by Nowak in the *Nowak* action.

4.     Attached hereto as Exhibit 4 is a true and correct copy of the Stipulated Protective Order entered in the *Nowak* action, obtained from the Court's docket and entered by the Court as Docket Item number 28.

5.     Prior to filing the instant motion, I contacted counsel for the United States of America and counsel for Dentsply in the above-captioned action. Both stated that they did not oppose Nowak's Motion to Intervene nor its requested modifications to the Stipulated Protective Order.

Executed this 14th day of March, 2008 at New York, New York.

Adam Steinfeld

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE



|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 99-005 (MMS) |
| | ) |
| DENTSPLY INTERNATIONAL, INC., | ) |
| | ) |
| Defendant. | ) |

## STIPULATED PROTECTIVE ORDER

Pursuant to the Court's June 11, 1999 Order, Fed. R. Civ. P. 26(c)(7), and in the interests of ensuring an efficient and prompt resolution of this action and of protecting Confidential Information of the parties and of non-parties from improper disclosure, plaintiff United States of America and defendant Dentsply International, Inc. (collectively "the parties") have stipulated to the entry of the attached Protective Order, which is made part of this stipulation, to govern disclosure in this case. It is the understanding of the parties that neither this stipulation nor the attached Protective Order shall waive, or in any way limit, the parties or any protected person's right to seek a supplemental protective order from the Court addressing the disclosure or use of Confidential Information at trial.

Pursuant to Fed. R. Civ. P. 26(c)(7), and in the interests of ensuring an efficient and prompt resolution of this action and of protecting Confidential Information of the parties and of non-parties from improper disclosure, the Court hereby orders that disclosure in this case shall be governed by the terms set forth in this Protective Order.

## A. DEFINITIONS

1.    As used herein:

(a)    "Confidential Information" means any trade secret or other confidential research, development, or commercial information, as such terms are used in Rule 26(c)(7) of the Federal Rules of Civil Procedure, produced by or in the possession of any protected person (as defined below), or produced or to be produced by a party in response to discovery requests in the above-captioned action, the disclosure, or further disclosure, of which would result in a clearly defined and serious injury;

(b)    "disclosed" means shown, divulged, revealed, produced, described, transmitted, or otherwise communicated, in whole or in part;

(c)    "document" is defined as the term is used in Fed. R. Civ. P. 34(a);

(d)    "party" or "parties" means plaintiff and/or defendant;

(e)    "protected person" means any non-party who, (i) voluntarily, (ii) in response to a civil investigative demand from the Department of Justice, or (iii) in response to discovery requests in this action from either party, produced or produces any information to either party in connection with this action or the Department of Justice's investigation of the matters at issue in this action; and

2

(f)    "this action" means the above-captioned action pending in this Court, including any pretrial, discovery, post-trial, or appellate proceedings.

## B. DESIGNATION OF CONFIDENTIAL INFORMATION

2.    A party or protected person may designate as confidential any information it hereafter discloses, either voluntarily or pursuant to discovery in this action, to either party in connection with this action, to the extent such information constitutes Confidential Information as defined in this Order. Such designations shall constitute a representation to the Court that such party or protected person (and counsel, if any) in good faith believes that the information so designated constitutes Confidential Information. Any production of information without its being designated as confidential shall not thereby be deemed a waiver of any claim of confidentiality concerning such information, and the same may thereafter be designated confidential.

3.    (a)    A protected person that has previously produced information to a party, either voluntarily or pursuant to a civil investigative demand, in connection with this action or with the investigation of the matters at issue in this action, may designate this information as confidential, to the extent such information constitutes Confidential Information as defined in this Order. Such designations shall constitute a representation to the Court that such protected person (and counsel, if any) in good faith believes that the information so designated constitutes Confidential Information;

(b)    any information heretofore produced, including information provided orally by a protected person in an interview with the Department of Justice and provided by the Department of Justice to defendant in its response to Defendant's Interrogatory No. 1, shall be treated as confidential for a period of twenty (20) days after notice to a protected person of the

3

terms of this Protective Order, unless a longer period of time is agreed to by all parties. The twenty (20) day period shall not begin to run as to the Confidential Information of any protected person included in the Response of the Department of Justice to Defendant's Interrogatory No. 1 ("Response"), until the relevant portions of the Response are served upon that protected person. At the expiration of the twenty (20) days, or the longer period of time agreed to by all parties, all such information shall be treated as non-confidential in the absence of specific designations of confidentiality;

(c)     during the twenty (20) day period, or the longer period of time agreed to by all parties, set forth in paragraph 3(b), any information heretofore produced by a protected person may not be disseminated beyond the disclosure allowed by Local Rule of Civil Practice and Procedure of the United States District Court for the District of Delaware 26.2 (D. Del. LR 26.2). Any production or dissemination of information without its being designated as confidential shall not thereby be deemed a waiver of any claim of confidentiality as to such information, and the same may thereafter be designated confidential;

(d)     if the material to be designated as confidential is from a deposition taken pursuant to a civil investigative demand, deponent or counsel for the deponent shall designate the Confidential Information by page and line and designate any exhibits that are to be considered confidential.

4.     If, at any time, a protected person files a motion seeking to modify the Protective Order or to prevent one party from producing to the other party any information that the protected person has produced, such information, if not already produced, shall not be produced until an Order issues from the Court providing for such production.

4

5.      A party or protected person designating information as confidential shall stamp or label the face of each document or disk containing electronic data with the designation "CONFIDENTIAL." If the entire document is not confidential, the party or protected person shall specify on the first page of the document the portions of the document that contain Confidential Information. Any marks on the document shall be made so as not to interfere with the legibility of the document.

6.  (a)      All transcripts of depositions hereafter taken shall be treated as if designated as confidential for a period of ten (10) days after a full and complete copy of the transcript has been received by deponent or deponent's counsel.

    (b)      Any deponent, counsel for that deponent, or counsel for a protected person given the opportunity to review the transcript may designate as confidential, during the ten (10) day period after the transcript is received from the court reporter, any portion of the transcript by designating the Confidential Information by page and line and by designating any exhibits that are to be considered confidential.

    (c)      In addition, during the course of a deposition, counsel for the respective parties or protected persons may identify, on the record, and in good faith, those portions of deposition transcripts and exhibit(s) to the depositions that contain or refer to Confidential Information.    Thereafter, the portions of deposition transcripts and exhibits identified as confidential, and all copies and synopses thereof, shall be marked in accordance with paragraph 5 of this Protective Order, and each page or exhibit of the deposition that contains Confidential Information shall be stamped "CONFIDENTIAL," in a manner that does not interfere with the legibility of the document. Such designations shall constitute a representation to the Court that

5

such party or protected person (and counsel, if any) in good faith believes that the information so designated constitutes Confidential Information.

    (d)    If an exhibit is used in a deposition that has previously been designated as confidential and the protected person who so designated the exhibit is not present at the deposition, the exhibit shall be treated as confidential, as will the portions of the transcript discussing or relating to that exhibit. Nothing in this subsection is deemed a waiver of the restrictions of paragraphs 10 and 11 with respect to those persons who may have access to Confidential Information.

7.    This Order shall not apply to information in the public domain or that rightfully enters the public domain regardless of whether such information is also contained in materials designated as confidential pursuant to this Order.

8.    (a)    Provided that the party has complied with the procedures set forth herein, this Order shall be without prejudice to the right of any party to bring before the Court the questions of whether particular information designated as confidential is appropriately designated and whether particular information designated confidential is or is not discoverable or admissible evidence at any evidentiary hearing or at trial in this case. By complying with this Order a party does not concede that any information designated by any party or protected person as confidential is in fact confidential as that term is defined in Paragraph 1(a) of this Order. However, no information designated as confidential pursuant to this Order shall be disclosed, except as provided herein, unless and until the Court orders the release of such information from the confidentiality provisions of this Order.

6

(b)    In the event that the Court cannot entertain a confidentiality classification dispute, the Court shall refer the dispute to a special master pursuant to Rule 53 of the Federal Rules of Civil Procedure to make findings of fact as to such confidentiality classification disputes. Pursuant to Rule 53(e)(4) of the Federal Rules of Civil Procedure, Plaintiff and Defendant stipulate that such findings of fact shall be final. The fees and costs of the special master in relation to the particular dispute shall be paid by the party challenging the confidentiality designation.

### C. DISCLOSURE OF CONFIDENTIAL INFORMATION

9.    Except as otherwise authorized by this Order, all persons obtaining access to Confidential Information in connection with this action shall use that information only for preparation and trial of this action, including any appeal and retrial, and shall not use such Confidential Information for any other purpose, including the furtherance of that person's business interests, or in any administrative or other proceeding. Any person found to have made an impermissible use of Confidential Information shall be subject, without limitation, to civil and criminal penalties for contempt of court.

10.    Except as otherwise authorized by this Order, information designated as confidential shall be used only in connection with this action, shall not be disclosed to any person other than the individuals set forth below, may be disclosed only as necessary in connection with this action to the individuals set forth below, and may be used by those individuals only as necessary in connection with this action:

7

(a)    the Court and all persons assisting the Court in this action, including court reporters and stenographic or clerical personnel;

(b)    Department of Justice attorneys, economists, and other employees; outside counsel working as an attorney for the Department of Justice in connection with this action and employees of such outside counsel; contract paralegals, secretaries and other administrative personnel working for the Department of Justice in connection with this action; any persons employed or retained as data base managers or as litigation support personnel by the Department of Justice in connection with this action, and their employees;

(c)    outside counsel working as an attorney of record for defendant in connection with this action and the employees of such outside counsel; contract paralegals, secretaries, and other administrative personnel working for outside counsel of defendant in connection with this action; and any persons employed or retained as data base managers or as litigation support personnel for outside counsel of defendant in connection with this action, and their employees;

(d)    economic, survey, industry, technical, legal, or other experts or consultants, retained by a party to assist in the conduct of this action, including, to the extent necessary for purposes of this action only, employees of the firm with which the expert or consultant is associated, provided that disclosure may only be made to experts and staff that are not employed or affiliated in any other way with defendant, with any of its competitors, or with plaintiffs in the cases referenced in subparagraph (f) of this provision;

(e)    authors, addressees, and recipients of particular information designated as confidential solely to the extent of disclosing such information of which they are an author, addressee, or recipient;

8

(f)    with the exception of Confidential Information produced by a protected person to either party prior to the signing of this Protective Order, members and employees of the firm of trial counsel who have entered an appearance in Howard Hess Dental Laboratories, Inc. v. Dentsply International, Inc., Civil Action No. 99-255, and Raiber v. Dentsply International, Inc., Civil Action No. 99-343, and any other individuals who are entitled access to Confidential Information under a protective order, entered in either one of the cases referenced in this provision, that allows no broader dissemination than the dissemination allowed by this protective order and, in particular, does not allow dissemination to the plaintiffs in the cases referenced in this provision; and

(g)    persons (and their agents) who have, or who any counsel for any party in good faith believes to have, had prior access to Confidential Information, or who have been participants in a communication that is the subject of the Confidential Information and from whom verification of or other information about that access or participation is sought, solely to the extent of disclosing such information to which they have or may have had access or that is the subject of the communication in which they have or may have participated, except that, unless and until counsel confirms that any such persons have had access or were participants, only as much of the information may be disclosed as may be necessary to confirm the person's access or participation.

11.    Brian Addison, General Counsel for Dentsply, shall not have access to information designated "confidential" unless he makes a predefined requisite showing, as determined by the Court, which, at a minimum, shall include: 1) extraordinary detailing of the circumstances warranting disclosure; 2) an explanation of why employment of any and all filtering devices would not suffice; and 3) an explanation of why reliance on the representations and opinions of outside

9

counsel would not be adequate. If Dentsply applies to the Court for Brian Addison to have access to certain information designated as "confidential" by a protected person, the protected person shall have the right to be heard before the Court determines that Dentsply has made the requisite showing.

12.    Confidential Information shall not be copied or reproduced except to the extent such copying or reproduction is necessary to the conduct of this action, and all such copies and reproductions shall be subject to the terms of this Order. If the duplicating process by which copies and reproductions of Confidential Information are made does not preserve the confidentiality designations that appear on the original documents, all such copies and reproductions shall be stamped "Confidential" as appropriate.

13.    Any work product or other materials generated in preparation for this action by counsel for either of the parties or anyone acting on their behalf, including but not limited to experts or other consultants retained for purposes of this action, that contain or reference Confidential Information shall have the following text clearly displayed: "Contains Confidential Material Protected By Court Order From Unauthorized Use." For documents that contain or reference Confidential Information, including but not limited to memoranda, drafts and other materials, the text shall also be placed prominently on the first page of such document. For file folders, such as red-welds or binders, that hold papers containing or referencing Confidential Information, the text shall be affixed on the outside of such file. For electronic files, the text shall be affixed to the labels for any discs containing or referencing Confidential Information and shall appear on the screen when the materials or information on the disc is first viewed. This provision

10

shall not apply where the work product or other material referenced in this paragraph contain solely a party's own Confidential Information.

      14.     Each individual described in Paragraph 10 or Paragraph 11 above, to whom information designated as confidential is disclosed, shall not disclose that information to any other individual, except as provided in this Order, or use it for any purpose other than in connection with this action. Before any information designated as confidential may be disclosed to any person described in Paragraph 10 or Paragraph 11 above, that person shall have first read this Order or shall have otherwise been instructed, by this Court or by counsel for a party, in that person's obligations under the Order. Additionally, before any information designated as confidential may be disclosed to any person described in Paragraph 10 (b-d) or in Paragraph 11, with the exception of a member of secretarial, clerical, or other support staff including contracted litigation support, at outside counsel representing defendant and at the Department of Justice, that person shall have executed the agreement included as Appendix A hereto. The counsel for the party making the disclosure shall retain the original of such executed agreement for a period of at least one year following the final resolution of this action.

      15.     Notwithstanding the provisions of Paragraphs 9, 10, 11, 12, 13, and 14 above, nothing in this Order shall:

          (a)     limit a party or protected person's use or disclosure of its own information;

          (b)     prevent a party, subject to taking appropriate steps to preserve the confidentiality of such information, from disclosing information designated as confidential either:

              (1)     to another court of law; or

              (2)     as may be required by law; and

11

(c)    prevent plaintiff, subject to taking appropriate steps to preserve the confidentiality of such information, from disclosing information designated as confidential:

(1)    to duly-authorized representatives of the Executive Branch of the United States Government;

(2)    in the course of legal proceedings to which the United States is a party;

(3)    for the purpose of securing compliance with a Final Judgment in this action; or

(4)    for law enforcement purposes.

16.    The party intending to make any disclosure pursuant to Paragraph 15 (other than in this action or a grand jury proceeding) shall give notice to that effect to the producing protected person at least ten (10) business days prior to making any such disclosure.

### D. USE OF CONFIDENTIAL INFORMATION IN LITIGATION

17.    If any Confidential Information is contained in any pleading, motion, exhibit, or other paper filed with the Court, the party filing such Confidential Information shall file the document(s) containing the Confidential Information to the Clerk of the Court in a sealed envelope with the following designation on the face of the envelope: "This envelope contains information designated as confidential pursuant to Order of the Court and may not be disclosed without further order of the Court." Such papers shall nevertheless be furnished to the Court, the plaintiff and defendant's outside counsel. Within ten (10) business days of filing any paper containing Confidential Information, the filing party shall file on the public docket of the Court a duplicate copy of the paper with the Confidential Information deleted.

12

18.    Evidence and information introduced at any evidentiary hearing or at trial shall not be treated as Confidential Information unless designated by order of the Court as such.

19.    Plaintiff shall treat all Confidential Information in accordance with the policy regarding disclosure of designated commercially or financially sensitive information set forth at 28 C.F.R. § 16.7. Plaintiff shall treat all information obtained in discovery in this action that has been designated as Confidential Information by defendant or third parties as "confidential business information" pursuant to the Freedom of Information Act, 5 U.S.C. § 552(b)(4), and shall honor all statutory obligations to protect the confidentiality of all such information obtained voluntarily or by means of compulsory process. If any request is made to plaintiff for Confidential Information covered by this Order, the plaintiff shall promptly give notice of that request to the producing party and shall not produce such Confidential Information until the party or non party that produced such information has an opportunity to object to such disclosure.

### E. PROCEDURES UPON TERMINATION OF LITIGATION

20.    Within ninety (90) days after receiving notice of the entry of an order, judgment, or decree terminating this action, all persons having received Confidential Information shall either make a good faith effort to return such Confidential Information and all copies thereof to counsel for the party or protected person that produced it, or destroy all such Confidential Information and certify that fact in writing to the party or protected person. The Department of Justice shall be entitled to retain court papers, deposition and trial transcripts and exhibits, and attorney-work product (including discovery material containing Confidential Information); provided that Department of Justice employees shall not disclose the portions of court papers, deposition transcripts, exhibits, or attorney-work product containing Confidential Information to any person,

13

except pursuant to court order or agreement with the party or protected person that produced the Confidential Information. All Confidential Information returned to the parties or their counsel by the Court likewise shall be disposed of in accordance with this Paragraph. Nothing in this provision, however, shall restrict the rights of the parties under Paragraph 15, or the rights of the United States to retain and use Confidential Information for law enforcement purposes or as otherwise required by law.

## F.  RIGHT TO SEEK MODIFICATION

21.    Nothing in this Order shall prevent either party from seeking modification of this Order upon motion duly made pursuant to the Rules of this Court nor shall it prevent a protected person from making a motion, pursuant to paragraph 4 of this Order, duly made pursuant to the Rules of this Court.

Respectfully submitted,

Dated:        July 23, 1999

FOR PLAINTIFF                          FOR DEFENDANT
UNITED STATES OF AMERICA:               DENTSPLY:

CARL SCHNEE
UNITED STATES ATTORNEY
FOR THE DISTRICT OF DELAWARE

By: _____           _____
Judith M. Kinney (No. 3643)            James P. Hughes, Jr. (No. 3102)
Assistant United States Attorney       YOUNG CONAWAY STARGATT &
U.S. Attorney's Office                 TAYLOR, LLP
1201 Market Street, Suite 1100         11th Fl., Rodney Square North
Wilmington, DE 19801                   P.O. Box 391
(302) 573-6277                         Wilmington, DE 19899-0391
                                       (302) 571-6692

14

Mark J. Botti
William E. Berlin
Frederick S. Young
Michael S. Spector
Health Care Task Force
Antitrust Division
U.S. Department of Justice
325 7th Street, N.W., Suite 400
Washington, D.C.  20530
(202) 307-0827

Margaret M. Zwisler
Richard A. Ripley
Kelly A. Clement
Eric J. McCarthy
HOWREY & SIMON
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

SO ORDERED:

_____
United States District Judge

July 27, 1999
Wilmington, Delaware

15

**APPENDIX A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 99-005 (MMS) |
| ) | |
| DENTSPLY INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |

## AGREEMENT CONCERNING CONFIDENTIALITY

I, _____, am employed as a _____ by _____. I hereby certify that:

1.    I have read the Protective Order entered in the above-captioned action, and understand its terms.

2.    I agree to be bound by the terms of the Protective Order entered in the above-captioned action. I agree to use the information provided to me only for the purposes of this litigation.

3.    I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action will subject me, without limitation, to civil and criminal penalties for contempt of Court.

16

4.    I submit to the jurisdiction of the United States District Court for the District of Delaware solely for the purpose of enforcing the terms of the Protective Order entered in the above-captioned action and freely and knowingly waive any right I may otherwise have to object to the jurisdiction of said Court.

5.    I make this certificate this _____day of _____, ___.


_____
(SIGNATURE)

17

# EXHIBIT 2

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,                )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )    C.A. No. 99-005-SLR
                                         )
DENTSPLY INTERNATIONAL, INC.,            )
                                         )
            Defendant.                   )
                                         )

## [PROPOSED] ORDER MODIFYING STIPULATED PROTECTIVE ORDER

**WHEREAS,** on July 27, 1999, pursuant to Federal Rule of Civil Procedure 26(c)(7), this

Court entered the Stipulated Protective Order governing disclosure in this case;

**WHEREAS,** Paragraph 9 of the Stipulated Protective Order provides as follows:

> 9.      Except as otherwise authorized by this Order, all persons
> obtaining access to Confidential Information in connection with
> this action shall use that information only for preparation and trial
> of this action, including any appeal and retrial, and shall not use
> such Confidential Information for any other purpose, including the
> furtherance of that person's business interests, or in any
> administrative or other proceeding. Any person found to have
> made an impermissible use of Confidential Information shall be
> subject, without limitation, to civil and criminal penalties for
> contempt of court.

**WHEREAS,** Paragraph 21 of the Stipulated Protective Order provides as follows:

> 21.     Nothing in this Order shall prevent either party from
> seeking modification of this Order upon motion duly made
> pursuant to the Rules of this Court nor shall it prevent a protected
> person from making a motion, pursuant to paragraph 4 of this
> Order, duly made pursuant to the Rules of Court.

**WHEREAS,** the Third Circuit Court of Appeals found in this case that Dentsply violated

Section 2 of the Sherman Act;

{00705769;v1}OHS West:260345074.1

**WHEREAS,** a third-party, Vident, has filed a lawsuit against Dentsply in the United States District Court for the Central District of California, in an action entitled *Vident v. Dentsply International, Inc.*, Case No. SACV 06-1141 PSG (ANx) (C.D. Cal.) (the "*Vident* Action"), alleging that Dentsply violated Section 2 of the Sherman Act;

**WHEREAS,** the *Vident* Action and the above-captioned case concern common questions of law and fact;

**WHEREAS,** Vident has timely moved to intervene for the sole purpose of modifying the Stipulated Protective Order in this case in order to allow Dentsply to disclose to Vident, for use in the *Vident* Action, materials designated under the Stipulated Protective Order;

**WHEREAS,** this Court may properly exercise jurisdiction over any previously entered confidentiality order in this case;

**WHEREAS,** the United States of America and Dentsply do not oppose Vident's Motion to Intervene for the Sole Purpose of Modifying the Stipulated Protective Order nor its proposed modifications;

**IT IS HEREBY ORDERED** this ___13th___ day of ___December___, 2007 that:

1.     Paragraph 9 of the Stipulated Protective Order is amended (as designated by the underlining) as follows:

> 9     Except as otherwise authorized by this Order, all persons obtaining access to Confidential Information in connection with this action shall use that information only for preparation and trial of this action, and *Vident v. Dentsply International, Inc.*, Case No. SACV 06-1141 PSG (ANx) (C.D. Cal.), including any appeal and retrial, and shall not use such Confidential Information for any other purpose, including the furtherance of that person's business interests, or in any administrative or other proceeding. Any person found to have made an impermissible use of Confidential Information shall be subject, without limitation, to civil and criminal penalties for contempt of court.

2.     Paragraph 10 of the Stipulated Protective Order is amended (as designated by the

underlining) as follows:

>10.     Except as otherwise authorized by this Order, information designated as confidential shall be used only in connection with this action, and *Vident v. Dentsply International, Inc.*, Case No. SACV 06-1141 PSG (ANx) (C.D. Cal.), shall not be disclosed to any person other than the individuals set forth below, may be disclosed only as necessary in connection with this action, and *Vident v. Dentsply International, Inc.*, Case No. SACV 06-1141 PSG (ANx) (C.D. Cal.), to the individuals set forth below, and may be used by those individuals only as necessary in connection with this action, and *Vident v. Dentsply International, Inc.*, Case No. SACV 06-1141 PSG (ANx) (C.D. Cal.):

>\* \* \*

>(h)     members and employees of the firm of trial counsel for Vident and Dentsply in *Vident v. Dentsply International, Inc.*, Case No. SACV 06-1141 PSG (ANx) (CD Cal), and any other individuals who are entitled access to Confidential Information under a protective order entered in that case that allows no broader dissemination than the dissemination allowed by this protective order.

Dated:     4/13/07

Honorable Sue L. Robinson
United States District Judge

# EXHIBIT 3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOWAK DENTAL SUPPLIES, INC. , | : | |
| | : | Docket No.: _____ |
| Plaintiff, | : | |
| | : | Complaint – Class Action |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| DENTSPLY INTERNATIONAL, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |

1.    Nowak Dental Supplies, Inc. ("Nowak" or "Plaintiff"), brings this

class action on behalf of itself and all others similarly situated, and avers as

follows, on information and belief:

## NATURE OF THE ACTION

2.    Plaintiff is a distributor of prefabricated artificial teeth, that, at all

relevant times, bought such teeth directly from defendant Dentsply International,

Inc. ("Dentsply" or "Defendant"). Nowak brings this civil action for damages because the prices that it and other members of the Class (defined below) paid for artificial teeth were artificially inflated due to Dentsply's conduct.

3.     Absent Dentsply's anti-competitive conduct, Plaintiff and the other Class members would have paid less for artificial teeth purchased during the Class Period (defined below). Prices for these products would have been lower with unfettered competition because absent the exclusionary conduct: (a) Dentsply's prices to members of the Class for artificial teeth would have been lower; and, (b) members of the Class would have replaced some of their artificial teeth purchases from Dentsply with less-expensive dental products sold by Dentsply's competitors. As a result of Dentsply's unlawful conduct, Plaintiff and the other Class members paid overcharges on their purchases of artificial teeth throughout the Class Period.

4.     Dentsply's anti-competitive practices center around an intentional and concerted effort to deny its competitors access to the market for artificial teeth by imposing upon dental supply dealers exclusive dealing requirements forbidding purchase of artificial teeth manufactured by Dentsply's competitors, threatening to terminate or in fact terminating dealers who purchased and distributed such competing goods, and refusing to deal with dealers who distributed competing tooth lines. These practices had the effect of suppressing and foreclosing

2

competition from products sold by other manufacturers, thus enabling Dentsply to charge prices for artificial teeth substantially above competitive levels, and drive up prices for all artificial teeth in the relevant market.

5.     Dentsply's imposition of exclusive dealing requirements (and retaliation against certain dealers who refused to abide by its demands) was particularly effective because of Dentsply's dominant share of the market for artificial teeth. Many dealers were faced with a Hobson's choice: restrict themselves to only Dentsply teeth (and the monopoly prices Dentsply could extract for such products), or be denied the opportunity to carry such products which, at all relevant times, constituted 80% or more of the market for prefabricated artificial teeth in the United States.

6.     The cumulative effect of Dentsply's exclusionary conduct has been to foreclose competing manufacturers of artificial teeth from a substantial portion of the market, and to prevent them from (a) gaining market share, and (b) achieving economies of scale and scope, thus driving up prices in the market for artificial teeth. As a result, Plaintiff and the other members of the Class that Plaintiff seeks to represent have paid supra-competitive prices for the artificial teeth at issue in this complaint.

3

7.    In 1999, the Department of Justice filed an antitrust suit against
Dentsply and succeeded in obtaining entry of an injunction against Dentsply by the
United States District Court for the District of Delaware, based upon the Third
Circuit's finding that Dentsply violated Section 2 of the Sherman Act as a result of
the acts detailed herein. The Third Circuit expressly found that distributors, such
as Plaintiff Nowak, are direct purchasers who would be harmed if Dentsply's
exclusionary conduct resulted in artificial tooth prices higher than would have been
charged but for that conduct. The final findings of fact and conclusions of law in
the Delaware litigation will be binding upon Dentsply in the instant action pursuant
to the judicial principle of collateral estoppel.

## JURISDICTION AND VENUE

8.    This Complaint is filed and these proceedings are instituted under
Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages and the
costs of suit, including a reasonable attorneys' fee, for the injuries sustained by
Plaintiff and members of the Class resulting from violations by the Defendant, as
hereinafter alleged, and under Section 2 of the Sherman Act, 15 U.S.C. § 2. The
jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 1337(a) and 15
U.S.C. § 15.

4

9.     The Defendant named herein is found or transacts business within this judicial district, and the interstate trade and commerce, hereinafter described, is carried out, in substantial part, in this district. Venue, therefore, is appropriate within this district under 15 U.S.C. §§ 22 and 28  U.S.C. § 1391(b) and (c).

10.     The Court has personal jurisdiction over Dentsply pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22.

## THE PARTIES

11.     Plaintiff Nowak Dental Supplies, Inc. is a Louisiana corporation with a business address of 6716 Hwy 11 North, Carriere, MS 39426. At all relevant times, Nowak purchased prefabricated artificial teeth directly from Dentsply and was injured thereby.

12.     Defendant Dentsply International Inc. is a Delaware corporation with corporate headquarters in York, Pennsylvania. Dentsply is a leading manufacturer and worldwide distributor of products and equipment for the dental market. Dentsply's total net sales in 2001 were approximately $1.1 billion. Through its Trubyte division, Dentsply manufactures and markets products used by dental laboratories to make dentures and other removable dental prosthetics. Dentsply regularly transacts business in this judicial district. Dentsply has had a high and/or dominant market share of the market for prefabricated artificial teeth in the United

5

States.

## CLASS ACTION ALLEGATIONS

13.    Plaintiff brings this action as a class action pursuant to the Federal

Rules of Civil Procedure 23(a) and (b)(3), and in accordance with M.D. Pa. Local

Rule 23.2, on its own behalf and as representatives of the following class of

persons and entities ("the Class"):

> All persons and entities who purchased prefabricated artificial teeth in
> the United States directly from Dentsply at any time during the period
> January 5, 1995, through the present (the "Class Period"). The Class
> excludes Dentsply, and Dentsply's parents, subsidiaries and affiliates.

14.    Joinder of all Class members is impracticable.  While the size of the

Class is not yet known with certainty, based on the nature of the trade and

commerce involved, Plaintiff reasonably believe that there are dozens of members

in the Class. Class members are geographically dispersed throughout the United

States.  The Class members are readily identifiable from information and records in

Dentsply's exclusive possession.

15.    Questions of law and fact are common to the Class, including but not

limited to:

    a.    whether Defendant obtained and maintained monopoly power

in the market for prefabricated artificial teeth in the United States;

    b.    whether Defendant obtained and/or maintained monopoly

6

power in the relevant market through anti-competitive and unlawful activity;

    c.    whether Defendant engaged in conduct which had the purpose and/or effect of unreasonably restraining competition and limiting purchaser access to competing prefabricated artificial teeth;

    d.    whether Defendant's unreasonably anti-competitive conduct has caused Plaintiff and the other members of the Class to suffer antitrust injury in the form of overcharges;

    e.    whether Dentsply's unlawful conduct caused Plaintiff and other Class members to pay more for prefabricated artificial teeth than they otherwise would have paid; and

    f.    the appropriate Class-wide measure of damages.

16.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and other Class members are direct purchasers of prefabricated artificial teeth and were overcharged, and thus injured by, the same wrongful conduct of Defendant. Defendant's violation of the antitrust laws, the effects of such violations, and the relief sought are all issues or questions that are common to Plaintiff and the other Class members.

17.    As representative of the Class, Plaintiff will fairly and adequately protect the interests of all Class members, and has engaged counsel experienced

7

and competent in antitrust and class litigation. The interests of the Plaintiff are coincident with, and not antagonistic to, the interests of the other Class members.

18. The questions of law and fact that are common to the members of the Class predominate over any questions affecting only individual Class members. Whatever possible difficulties may exist in the management of the class action are greatly outweighed by the advantages of the class action procedure. Those advantages include, but are not limited to, providing Class members with a method for redress of claims that might otherwise not warrant individual litigation.

19. Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. A class action enables injured persons or entities to obtain redress on claims that might not be practicable to pursue individually. Class treatment also eliminates the potential for inconsistent adjudications.

## FACTUAL ALLEGATIONS

## I. The District Court Action

20. In 1999, the United States brought suit against Dentsply in the District

8

of Delaware, for, *inter alia*, violations of Section 2 of the Sherman Act arising from Dentsply's foreclosure of competition in the market for artificial teeth. See United States v. Dentsply Int'l, Inc., 99-cv-005 (D. Del.) (SLR). Following a bench trial, the Delaware court made detailed *findings of fact* regarding the market for artificial teeth in the United States, and the exclusionary nature of Dentsply's actions therein. These findings were either affirmed or left undisturbed by a subsequent opinion of the Third Circuit.

21.    As an initial matter, the District Court determined that Dentsply had dominated the market for artificial teeth used in the United States "for at least ten years" and had a 75%-85% share of the market for prefabricated artificial teeth in the United States on a revenue basis, and was 15 times larger than its next closest competitor. See United States v. Dentsply Int'l, Inc., 277 F.Supp.2d 387, 423 (D. Del. 2003).

22.    The District Court recited voluminous anecdotal evidence establishing that, starting at least as early as 1987, Dentsply decided to leverage this dominant share of the artificial tooth market in order to "lock up" the most efficient means of artificial tooth distribution (the dental supply dealers), thereby substantially foreclosing effective competition from other artificial tooth manufacturers seeking to enter or expand into the U.S. market. Id. at 412–413. Dentsply achieved this

9

purpose by rigorously promoting a policy of discouraging its dealers from adding competitors' teeth to their lines of products, and enforcing such policy by threatening to terminate (or in fact terminating) dealers who refused to comply. Id. at 412–419. Notably, before Dentsply imposed its restrictive dealing requirements in the late 1980s, Dentsply did not restrain Class members' ability to sell the artificial teeth of other manufacturers. Id. at 413.

23.    Subsequently, in 1993, Dentsply decided to formalize its exclusionary policy through the imposition of written "Dealer Criteria" for its Trubyte Division. These Dealer Criteria set forth various conditions for continuing as, or becoming, a dealer of Trubyte products. "Dealer Criterion Number 6" states that dealers that are recognized as authorized distributors "may not add further tooth lines to their product offering." Id. at 412. Thus, in enacting Dealer Criterion 6, Dentsply expressly stated its refusal to do business with dealers that added its rivals' tooth lines. Id. at 413.

24.    As it had with its unwritten policies, Dentsply actively monitored compliance with Dealer Criteria 6, and enforced the criteria by warning dealers not to add new lines of teeth, terminating dealers that did add new lines, and compelling some dealers to enter into express agreements to assure their partial or complete compliance with the criteria. Id. at 412–419. Furthermore, when

10

threatening to terminate a dealer, Dentsply also threatened a refusal to sell any
other merchandise to that dealer, "as additional leverage in coercing dealers to
agree not to add competing tooth lines." Id. at 420. Even Dentsply dealers who
merely acquired non-Dentsply dealers were required to drop the non-Dentsply
lines of the acquired dealers. Id. at 412–413. Meanwhile, consistent with Dealer
Criterion 6, most new dealers were accepted by Dentsply only when they dropped
their sales of non-Dentsply teeth. Id. at 414.

25.    Dentsply's dealer policies, embodied in Dealer Criterion 6, were
intended to have, and did have, the effect of foreclosing Dentsply's competitors'
access to dental supply dealers. Id. at 419–422. Moreover, there can be no doubt
of the exclusionary intent behind Dentsply's conduct. Dentsply has admitted that
the express purpose of Dealer Criterion 6 was to "block competitive distribution
points" and "tie up dealers". As Gordon Hagler, Trubyte's Director of Sales and
Marketing from 1989-93 stated on the record, the purpose of Dealer Criterion
Number 6 was "solely" to exclude Dentsply' s competitors from the dealers so that
Dentsply's competitors' teeth could not effectively be sold to dental laboratories.
As Hagler stated about Dealer Criterion 6:

> You don't want your competition with your distributors, you don't
> want to give the distributors an opportunity to sell a competitive
> product. And you don't want to give your end user, the customer,
> meaning a laboratory and/or a dentist, a choice. He has to buy

11

> Dentsply teeth. That's the only thing that's available. The only place
> you can get it is through the distributor and the only one that the
> distributor is selling is Dentsply teeth. That's your objective.

Id. at 420.

26.    Finally, the District Court concluded that Dentsply's alleged

justification for Dealer Criterion 6 was pretextual and did not excuse its

exclusionary practices. Its asserted justifications were inconsistent with its own

announced reason for its exclusionary policies, its conduct enforcing the policy, its

rival suppliers' actions, and dental supply dealers' behavior in the marketplace.

Moreover, its exclusionary intent was also apparent from its use of non-tooth

products as additional leverage in coercing dental supply dealers to agree not to

add competing tooth brands. Id. at 440–49.

## II.    The Third Circuit Opinion

27.    In an opinion dated February 24, 2005, the Third Circuit, having

reviewed the record below and the prior findings of the District Court, reexamined

Dentsply's conduct, and made additional findings regarding the relevant market

and the effects of Dentsply's exclusionary conduct. See United States v. Dentsply

Int'l, Inc., 399 F.3d 181 (3d Cir. 2005).

28.    First, the Court made findings regarding the important role dental

supply dealers play in the market for artificial teeth. Id. at 191–193. Although

12

some artificial tooth manufacturers sell directly to dental laboratories, Dental
supply dealers such as Nowak have been, and continue to be, the primary channel
of distribution of artificial teeth to dental laboratories. Such dealers provide
efficiencies of scale that reduce distribution costs, and take on credit risks that
manufacturers otherwise would have to assume if selling to laboratories directly.
Id. Dealers also provide one-stop shopping for products manufactured by various
suppliers, as well as one-stop returning of products manufactured by various
suppliers. As a result, manufacturers of artificial teeth need to distribute through
local dental supply dealers throughout the country in order to compete effectively.
Id. at 193 ("The benefits that dealers provide manufacturers help make dealers the
preferred distribution channels - in effect, the 'gateways' - to the artificial teeth
market. [Selling directly to dental laboratories] is 'viable' only in the sense that it
is 'possible,' not that it is practical or feasible in the market as it exists and
functions.")

29.    Thus, because of dealers' key role in the distribution chain, Dentsply's
efforts to deny competitors' access to dealers effectively foreclosed competitors
from a substantial portion of the market. As the Court observed, "[t]he reality is
that over a period of years, because of Dentsply's domination of dealers, direct
sales have not been a practical alternative for most manufacturers. It has not been

13

so much the competitors' less than enthusiastic efforts at competition that produced

paltry results, as it is the blocking of access to the key dealers. This is the part of

the real market that is denied to the rivals." Id. at 189.

    30.    In short, given Dentsply's monopoly share of the market, and

Dentsply's demand that its dealers comply with its exclusive dealing requirements,

the Third Circuit concluded: "The evidence demonstrated conclusively that

Dentsply had supremacy over the dealer network and it was at that crucial point in

the distribution chain that monopoly power over the market for artificial teeth was

established. The reality in this case is that the firm that ties up the key dealers rules

the market." Id. at 190. As a result, Dentsply's exclusionary policies harmed

competition in the market for artificial teeth. Id. at 191 ("By ensuring that the key

dealers offer Dentsply teeth either as the only or dominant choice, Dealer Criterion

6 has a significant effect in preserving Dentsply's monopoly. It helps keep sales of

competing teeth below the critical level necessary for any rival to pose a real threat

to Dentsply's market share. As such, Dealer Criterion 6 is a solid pillar of harm to

competition.")

    31.    Furthermore, the Court found that Dentsply's control over prices for

its artificial teeth was indicative of market power: "Dentsply did not reduce its

prices when competitors elected not to follow its increases. Dentsply's profit

14

margins have been growing over the years. . . . The results have been favorable to
Dentsply, but of no benefit to consumers." Id. at 190–191. Regardless of the
magnitude of the premium Dentsply's extracted, "[t]he record of long duration of
the exclusionary tactics and anecdotal evidence of their efficacy make it clear that
power existed and was used effectively." Id.

     32.    Based on these findings of fact, the Third Circuit concluded that, (a)
Dentsply had power in the relevant market for prefabricated artificial teeth in the
United States, and (b) Dentsply maintained that power by means of improper
exclusionary conduct: "Dentsply's grip on its 23 authorized dealers effectively
choked off the market for artificial teeth, leaving only a small sliver for
competitors. The District Court erred when it minimized that situation and focused
on a theoretical feasibility of success through direct access to the dental labs.
While we may assume that Dentsply won its preeminent position by fair
competition, that fact does not permit maintenance of its monopoly by unfair
practices. We conclude that on this record, the Government established that
Dentsply's exclusionary policies and particularly Dealer Criterion 6 violated
Section 2." Id. at 196.

     33.    Following the Third Circuit's decision, the District Court entered
judgment for the Government, and further granted significant and comprehensive

15

injunctive relief designed to bar Dentsply from instituting and/or enforcing

exclusive dealing arrangements with dental supply dealers. See United States v.

Dentsply Int'l, Inc., 2006 U.S. Dist. LEXIS 94907 (D. Del., Apr. 26, 2006). The

opinions of the District Court and Third Circuit are now final and not subject to

further court review.

34.    Under Section 5(a) of the Clayton Act, 15 U.S.C. Sec. 16(a), and the

collateral estoppel doctrine, the findings and conclusions of the Third Circuit in

United States v. Dentsply International, Inc., 399 F.3d 181 (3d Cir. 2005), cert.

denied, 126 S.Ct. 1023 (Jan. 9, 2006), and the undisturbed findings of the

Delaware District Court, are conclusive in the instant action as against Dentsply,

and Dentsply is estopped from contesting the same in this action.

## ANTICOMPETITIVE EFFECTS OF DENTSPLY'S CONDUCT

35.    The overall effect of Dentsply's anti-competitive, exclusionary acts

has been to substantially foreclose and impair competition (and the threat of such

competition) from lower-priced and/or superior quality prefabricated artificial

teeth.

36.    Dentsply's refusals to deal, restrictive dealing requirements, and other

anticompetitive acts as alleged in this Complaint have effectively deprived rival

tooth

16

manufacturers of access to the vast majority of, and the most important and
efficient, sales outlets for artificial teeth in the United States and, therefore, of the
ability to compete effectively in the United States market for prefabricated,
artificial teeth.

    37.    Absent the challenged conduct, and the substantial foreclosure and
impairment of effective competition caused by such conduct, Dentsply, as a
rational manufacturer, would have reduced its prices as a response to the added
competitive pressure that would have resulted from unimpaired competition by
other manufacturers of prefabricated artificial teeth. Moreover, had other actual or
potential prefabricated artificial teeth manufacturers not been substantially
foreclosed or stifled by Dentsply's anti-competitive conduct from effectively
competing in the market for such products, the other actual or potential competitors
would have sold much more of their products and gained much larger market
share, enabling them to achieve economies of scale and scope. As these
competitors increased their sales and achieved economies of scale, their costs
would have fallen, and thus they would have been able to provide their products at
even lower prices, further pressuring Dentsply to lower its prices in response.

    38.    By unlawfully excluding and impairing competition, Dentsply's
conduct has caused Plaintiff and the other Class members to pay more for

prefabricated artificial teeth than they otherwise would have paid absent
Dentsply's illegal, exclusionary conduct.

## DAMAGES

39.     As a result of Dentsply's illegal conduct, members of the Class were
compelled to pay, and did pay, artificially inflated prices for the prefabricated
artificial teeth they purchased. Had potential competitors been able to enter the
market unimpeded by Defendant's illegal conduct (or been a threat to enter the
market), and been able to achieve economies of scale, Plaintiff and other members
of the Class would have been able to, *inter alia*, purchase less expensive
prefabricated artificial teeth. The prices that Plaintiff and the other Class members
paid for prefabricated artificial teeth during the Class Period were substantially
greater than the prices that Plaintiff and the Class members would have paid absent
the illegal exclusionary conduct alleged herein because: (1) the prices of all
prefabricated artificial teeth were artificially inflated by Dentsply's illegal conduct;
and (2) Class members were deprived of the opportunity to purchase competing
prefabricated artificial teeth, other than Dentsply's, and to purchase those
competing products at substantially lower prices. Members of the Class have, as a
consequence, sustained substantial losses and damage to their business and
property in the form of overcharges. The full amount and components of such

18

damages will be calculated after discovery and upon proof at trial.

## STATUTE OF LIMITATIONS

40.    Pursuant to section 5(i) of the Clayton Act, 15 U.S.C. §16(i), the
running of the statute of limitations with respect to this private right of action
based upon matters complained of in the United States' litigation against Dentsply
was tolled during the pendency of that litigation, and one year thereafter. The
United States' litigation began on January 5, 1999 and continued through April 26,
2006, thus tolling the statute of limitations (and defenses related to time) through
April 27, 2007. On or around April 24, 2007, Plaintiff and Defendant Dentsply
entered into an agreement to further toll any statutes of limitation and defenses
related to time applicable "to any claim, cause of action, complaint, cross-claim,
petition, demand or other legal action or proceeding against Dentsply under
Sections 1 or 2 of the Sherman Act or Section 3 of the Clayton Act . . . arising out
of or related in any manner to the facts, or issues, or transactions raised or referred
to in . . . United States v. Dentsply Int'l, Inc., D. Del., Civil Action No. 99-005-
MMS." Such tolling was in effect from April 1, 2007 through the filing of this
Complaint.

41.    Accordingly, pursuant to 15 U.S.C. §16(i) and the subsequent
agreement between Plaintiff and Dentsply, Plaintiff is entitled to seek recovery for

19

damages attributable to Dentsply's wrongful conduct beginning, at least, as of four years prior to the commencement of the government action, or January 5, 1995.

## CAUSE OF ACTION

### COUNT I
### Monopolization- Sherman Act §2

42.    Plaintiff incorporates by reference all of the foregoing allegations as though fully set forth at length.

43.    Dentsply willfully maintained and unlawfully exercised monopoly power in the relevant market.

44.    Dentsply's conduct in maintaining and extending its monopoly power in the relevant markets constitutes unlawful monopolization in violation of §2 of the Sherman Act. (15 U.S.C. §2).

45.    Dentsply acted willfully to maintain and exercise monopoly power in the relevant market through exclusionary, anti-competitive conduct set forth above, including, but not limited to, compelling independent dental supply dealers to refrain from adding lines of prefabricated artificial teeth made by competing manufacturers.

46.    There is no legitimate business justification for the actions and conduct through which Dentsply maintained its monopoly in the relevant market.

20

47.     Dentsply has effectively excluded competition from the relevant

markets, maintained its dominant market share in the relevant markets, and

profited from its anti-competitive conduct by excluding less expensive, superior

competitive products, by maintaining prices at artificially high levels, and by

reaping the benefits of its illegal obtained monopoly power.

48.     The anti-competitive effects of Dentsply's conduct far outweigh any

conceivable procompetitive benefits or justifications.

49.     Plaintiff and members of the Class were injured in their business or

property by Defendant's monopolization of the market for prefabricated artificial

teeth.  Without limiting the generality of the foregoing, Plaintiff and the other

members of the Class have been forced to pay higher prices for prefabricated

artificial teeth than they would have paid in the absence of Defendant's unlawful

conduct.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and the Class, respectfully

request that:

(i)     The Court determine that this action may be maintained as a class

action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that

reasonable notice of this action, as provided by Rule 23, be given to the Class;

21

(ii)    The acts alleged herein be adjudged and decreed to be unlawful acts in violation of Section 2 of the Sherman Act;

(iii)    Each member of the Class recover three-fold the damages determined to have been sustained by each of them, and that judgment be entered against Defendant in favor of the Class; and

(iv)    The Class recover its costs of suit, including reasonable attorneys' fees and costs as provided by law.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 2, 2007                    Respectfully submitted,

                                          /S/ Steven E. Grubb, Esquire
                                          Steven E. Grubb, Esquire (PA75897)
                                          GOLDBERG KATZMAN, P.C.
                                          320 Market Street, Strawberry Square
                                          P.O. Box 1268
                                          Harrisburg, PA 17108
                                          Tel: (717) 234-4161
                                          Fax: (717) 234-6808

GARWIN GERSTEIN & FISHER LLP        KAPLAN, FOX & KILSHEIMER, LLP
Bruce E. Gerstein                   Linda Nussbaum
Noah Silverman                      850 Third Avenue
Adam Steinfeld                      New York, NY 10022
1501 Broadway, Suite 1416           Tel: (212) 687-1980
New York, NY 10036                  Fax: (212)687-7714
Tel: (212) 398-0055
Fax: (212) 764-6620

ODOM & DES ROCHES, L.L.P.
John Gregory Odom
Stuart E. Des Roches
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078

PHELPS DUNBAR, LLP
Brent B. Barrier
365 Canal Street, Suite 2000
New Orleans, LA 70130
Tel: (504) 566-1311
Fax: (504) 568-9130

PERCY, SMITH & FOOTE, L.L.P.
David P. Smith
W. Ross Foote
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
Tel: (318) 445-4480
Fax: (318) 487-1741

KOZYAK TROPIN &
THROCKMORTON
Adam Moskowitz
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
**Counsel for the Plaintiff,
Nowak Dental Supplies, Inc.**

EXHIBIT 4



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - x
                              :

NOWAK DENTAL SUPPLIES, INC.,        :

        Plaintiff,            :     No. 1:07-cv-01799

                        :

        v.              :

                        :     (Judge Conner)

DENTSPLY INTERNATIONAL, INC.,   :

        Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - X

### STIPULATED PROTECTIVE ORDER

      In order to protect the confidentiality of confidential information produced

in connection with this case, the parties to this "Stipulated Protective Order"

("Order") hereby agree as follows:

      1.     Any party to this Order ("party" or "parties" refers respectively to a

party or parties to this Order) or non-party to this Order  may designate as

"Confidential" (by stamping the relevant page or as otherwise set forth herein)

("Designating Party") any document or other materials produced or otherwise

disclosed by the Designating Party voluntarily or in response to a discovery

request, subpoena or court order which the Designating Party considers in good

faith to contain, embody, or otherwise reveal "Confidential Information". For

purposes of this Order, "Confidential Information" shall be either (a) information

from after January 1, 2003 involving any business, association or professional

matters that are not generally known, that have commercial value and that the

Designating Party would not normally reveal to third parties or would cause third

parties to maintain in confidence; or (b) information from before January 1, 2003

involving any trade secret or other confidential research, development, or

commercial information, as such terms are used in Rule 26(c)(7) of the Federal

Rules of Civil Procedure, the disclosure, or further disclosure, of which would

result in a clearly defined and serious injury to such party; or (c) information

described in Paragraph 7 of this Order. Where a document or response containing

Confidential Information consists of more than one page, the first page and each

page on which Confidential Information appears shall be so designated.

2.    Any party or non-party may designate as "Highly Confidential" (by

stamping the relevant page or as otherwise set forth herein) any document or other

materials produced or otherwise disclosed by a party voluntarily or in response to a

discovery request, subpoena or court order which the Designating Party considers

in good faith to contain "Highly Confidential Information". For purposes of this

order, "Highly Confidential Information" shall be information from after January

1, 2003 involving any trade secret or other confidential research, development, or

commercial information, as such terms are used in Rule 26(c)(7) of the Federal

Rules of Civil Procedure, the disclosure, or further disclosure, of which would

result in a clearly defined and serious injury to such party. Where a document or

response containing Highly Confidential Information consists of more than one

page, the first page and each page on which Highly Confidential Information

appears shall be so designated.

3.    Upon a showing of good cause by the Designating Party, and an order

of the Court issued after all parties have been given notice and an opportunity to be

heard at a hearing, specific information from before January 1, 2003, involving any

trade secret or other confidential research, development, or commercial

information, as such terms are used in Rule 26(c)(7) of the Federal Rules of Civil

Procedure, the disclosure, or further disclosure, of which would result in a clearly

defined and serious injury to such party, may be designated as "Highly

Confidential Information." A Designating Party's intention to make such a showing

is not, without more, a ground for such person to withhold information from

discovery or to delay its production. A party wishing to have specific information

from before January 1, 2003 treated as "Highly Confidential Information" should

designate such information as Highly Confidential and upon production

specifically identify that information to the other parties. As a result of this notice,

the information shall be treated by the parties as "Highly Confidential". After five

3

(5) business days, if the parties have not agreed to treating the information as Highly Confidential, then the Designating Party shall notify the Court that it wishes to raise this issue with the Court. If the Designating Party makes such a request to the Court after identifying and producing this pre-2003 information to all other parties, the information shall be treated as "Highly Confidential" until the Court rules on the request. If the Designating Party does not identify this pre-2003 information to the parties and/or does not notify the Court that it wishes to raise this issue with the Court, then this pre-2003 information shall have no extra privileges deriving from this paragraph and shall be treated as Confidential Information unless the parties otherwise agree.

4.    Any party may designate information disclosed by that party during a deposition as "Confidential" or "Highly Confidential" by so indicating on the record at the deposition. Where such a designation is made during a deposition, the front page of the transcript shall be marked by the court reporter as follows: "Contains Confidential Information Subject to Protective Order" or "Contains Highly Confidential Information Subject to Protective Order." If no such designation is made during a deposition, the entire transcript of the deposition shall be treated by each party as if it were Highly Confidential for twenty (20) days after such party receives the transcript. Within twenty (20) days after a party receives the transcript of a deposition of such party, such party may give notice in writing to

4

all other parties that information disclosed during the deposition is Confidential or

Highly Confidential and designating specific pages and lines of the transcript as

"Confidential" or "Highly Confidential". Any party may object to the designation

of any information disclosed during a deposition, or any part of a deposition

transcript, as Confidential, or Highly Confidential and may do so on the record

during the deposition, or, in writing, at any time after the designation has been

made. Upon such objection, the parties shall follow the procedures described in

paragraph 17 below. After any designation made according to the procedure set

forth in this paragraph, the designated information shall be treated according to the

designation until the matter is resolved according to the procedures described in

paragraph 17 below, and counsel for all parties shall be responsible for marking all

previously unmarked copies of the designated material in their possession or

control with the specified designation.

     5.     Any party may voluntarily disclose to others, without restriction, any

information designated by such party as Confidential or Highly Confidential, or

may give written permission to another party or other person to reveal such

Confidential Information or Highly Confidential Information to a person not

otherwise entitled to receive such information under this Order, although

Confidential Information or Highly Confidential Information may lose its status if

it is made public.

6.     Production of any information, documents or materials in response to
a discovery request, subpoena or court order without a designation of
"Confidential" or "Highly Confidential" shall not in and of itself be deemed a
waiver of any party's claim of confidentiality as to such matter.  A producing
party may belatedly designate materials or information as "Confidential," or
"Highly Confidential" so long as it does so reasonably promptly after learning of
the oversight.  When a producing party makes a belated "Confidential" or "Highly
Confidential" designation, counsel for all other parties shall make reasonable
efforts to maintain the confidentiality of the information, including seeking the
return of such Confidential Information or Highly Confidential Information from
any person to whom disclosure was made but to whom disclosure would not have
been permitted by this Order had the Confidential or Highly Confidential material
been timely designated. Any non-designating party may object to the belated
designation, in which case, the parties shall follow the procedures in paragraph 17,
below.

7.     Any information designated as confidential under the stipulated
protective order entered in *United States v. Dentsply Int'l, Inc.*, C.A. No. 99-005
(D. Del.), or the stipulated protective order entered in *Howard Hess Dental
Laboratories Inc., et al. v. Dentsply Int'l, Inc.*, C.A. No. 99-255 (D. Del.), or the
stipulated protective order entered in *Jersey Dental Laboratories v. Dentsply*

6

*International, Inc.*, C.A. No. 01-267 (D. Del.), or filed under seal in either of those

actions, may and must be treated as information designated as "Confidential"

under this Order, unless and until the designating person withdraws such

designation, or, pursuant to the procedure under paragraph 17, the material

otherwise loses its designation as Confidential Information.

      8.    Except with the prior written consent of the Designating Party, or

upon prior order of this Court obtained upon notice to all parties, Confidential

Information shall not be disclosed to any person other than:

> A)    counsel for the respective parties to this litigation, including in-
>
> house counsel and co-counsel retained for this litigation;
>
> B)    employees of such counsel;
>
> C)    consultants or expert witnesses retained for the prosecution or
>
> defense of this litigation, provided that each such person shall
>
> execute a copy of the certification annexed to this Order as
>
> "Attachment A" (a "Certification") (which shall be retained by
>
> counsel to the party disclosing the Confidential Information to
>
> the consultant or expert witness, and made available for
>
> inspection by opposing counsel during the pendency or after the
>
> termination of the action only upon good cause shown and upon

7

order of the Court) before being shown or given any
Confidential Information;

D)    any authors or recipients (prior to production herein) of the
Confidential Information;

E)    the Court, Court personnel, and court reporters; and

F)    deponents, and their counsel, in preparation for and/or during
their depositions, provided that such deponent is:

(i) a person described in 8(D);

(ii) a current employee of the Designating Party of the
Confidential Information to be disclosed; or

(iv) a former employee of the Designating Party of the
Confidential Information to be disclosed, provided that, (a)the
deponent had access to the Confidential Information at the time
employed by the Designating Party and such access is apparent
from the face of a document introduced at deposition, or (b) it is
confirmed by testimony or through other discovery that the
former employee had access to the Confidential Information
(regardless of the form or means of access) during the
deponent's employment with the Designating Party..

8

At the request of any party, the portion of the deposition

transcript involving the Confidential Information shall be

designated "Confidential" pursuant to paragraph 4 above. Such

deponents shown Confidential Information shall not be allowed

to retain documents containing this Confidential Information.

9.    Except with the prior written consent of the other parties, or upon

prior order of this Court obtained upon notice to opposing counsel, Highly

Confidential Information shall not be disclosed to any person other than:

A)    counsel for the respective parties to this litigation, including in-

house counsel, provided that such counsel does not make or

participate in business decisions for the party, or an in-house

counsel agreed to in advance by the parties, and co-counsel

retained for this litigation;

B)    employees of such counsel whose assistance is required in this

litigation;

C)    consultants or expert witnesses retained for the prosecution or

defense of this litigation, provided that each such person shall

execute a copy of the Certification annexed to this Order (which

shall be retained by counsel to the party disclosing the Highly

Confidential Information to the consultant or expert witness and

9

made available for inspection by opposing counsel during the

pendency or after the termination of the action only upon good

cause shown and upon order of the Court) before being shown

or given any Highly Confidential Information;

D)     any authors or recipients (prior to production herein) of the

Highly Confidential Information; and

E)     the Court, Court personnel, and court reporters;

F)     deponents, and their counsel, in preparation for and/or during

their depositions, provided that such deponent is:

(i) a person described in 9(D);

(ii) a current employee of the Designating Party of the

Confidential Information to be disclosed; or

(iv) a former employee of the Designating Party of the

Confidential Information to be disclosed, provided that, (a)the

deponent had access to the Confidential Information at the time

employed by the Designating Party and such access is apparent

from the face of a document introduced at deposition, or (b) it is

confirmed by testimony or through other discovery that the

former employee had access to the Confidential Information

10

(regardless of the form or means of access) during the

deponent's employment with the Designating Party..

At the request of any party, the portion of the deposition

transcript involving the Highly Confidential Information shall

be designated "Highly Confidential" pursuant to paragraph 4

above. Such deponents shown Highly Confidential Information

shall not be allowed to retain documents containing this Highly

Confidential Information.

G) Highly Confidential Information shall only be disclosed to

individuals entitled to receive such information under

paragraphs 9(A) and 9(B) of this Order to the extent that such

disclosure is necessary for the conduct of this litigation.

10.    Each party shall make its best efforts to obtain a signed Certification

of each of its employees or agents who is deposed prior to such person's being

deposed. If a party is unable to obtain a signed Certification from any such

employee or agent, such party will inform the deposing party no less than five (5)

business days prior to the scheduled date of the deposition of that person from

whom a signed Certification has not been obtained.

11.    Brian Addison, General Counsel for Dentsply, shall not have access to

Highly Confidential Information unless he makes a predefined requisite showing,

11

as determined by the Court, which, at a minimum, shall include: (1) extraordinary detailing of the circumstances warranting disclosure; (2) an explanation of why employment of any and all filtering devices would not suffice; and (3) an explanation of why reliance on the representations and opinions of outside counsel would not be adequate. If Dentsply applies to the Court for Brian Addison to have access to certain Highly Confidential Information, the producing party shall have the right to be heard before the Court determines that Dentsply has made the requisite showing.

12.    Every person, other than the Court, Court personnel, court reporters, persons referenced in paragraph 8(D), and 9(D) and outside counsel for the parties (and their stenographic, clerical, secretarial, paralegal or other personnel whose functions require access to the information), who receives Confidential Information or Highly Confidential Information shall read this Order and execute a Certification, stating that the person agrees to be bound by the terms of this Order. Counsel for each party shall maintain a file containing the Certifications executed by each such person to whom disclosure of Confidential Information or Highly Confidential Information is made by such counsel.

13.    Any persons receiving Confidential Information or Highly Confidential Information shall not reveal or discuss such information to or with any person who is not entitled to receive such information, except as set forth

12

herein. Confidential Information and Highly Confidential Information shall be used only for the purposes of this action, including trial and any appeals, and for no other purpose.

14.    If Confidential Information or Highly Confidential Information is disclosed to any person not authorized by this Order to receive it, the person responsible for such disclosure must notify the Designating Party promptly upon learning of such disclosure, and take all reasonable steps to secure the return of such information and to ensure that such information is not further disseminated to persons not authorized to receive it under this Order.

15.    Nothing herein shall impose any restrictions on the use or disclosure by a party or other person subject to this Order regarding any documents, material or information obtained by such party or other person independently of the discovery proceedings in this action, whether or not such documents, material or information also are obtained by such party or other person through discovery proceedings in this action.

16.    For applications and motions to the Court on which a party submits Confidential Information or Highly Confidential Information, all documents and chamber copies containing Confidential Information or Highly Confidential Information which are submitted to the Court shall be filed with the Court in sealed envelopes or other appropriate sealed containers. On the outside of the envelopes,

13

a copy of the first page of the document shall be attached. If Confidential

Information or Highly Confidential Information is included in the first page

attached to the outside of the envelopes, it may be deleted from the outside copy.

The word "CONFIDENTIAL" or "Highly Confidential" shall be stamped on the

envelope and a statement substantially in the following form shall also be printed

on the envelope:

> This envelope is sealed pursuant to Order of the Court,
> contains Confidential Information and is not to be opened
> or the contents revealed, except by Order of the Court or
> agreement by the parties.

> or

> This envelope is sealed pursuant to Order of the Court,
> contains Highly Confidential Information and is not to
> be opened or the contents revealed, except by Order of
> the Court or agreement by the parties.

17.    If a party contends that any information is not entitled to confidential

treatment, such party may at any time challenge the Confidential or Highly

Confidential designation by giving written notice of its objection to such

designation to the Designating Party. The parties shall, within ten (10) days of

such notice, meet and confer in an attempt to resolve the disputed designation. If

the parties are unable to reach a resolution, the party challenging the designation

may seek an order from the Court changing or removing said designation. The

party or other person who designated the information as Confidential or Highly

14

Confidential has the burden of establishing that the information is entitled to such
designation and protection.

18.     Notwithstanding any challenge to the designation of material as
Confidential Information or Highly Confidential, all material designated as
Confidential or Highly Confidential shall be treated as such and shall be subject to
the provisions hereof unless and until one of the following occurs:

> A)     the party or other person who claims that the material is
> Confidential Information or Highly Confidential withdraws
> such designation in writing; or
>
> or
>
> B)     the Court rules the material is not Confidential Information or
> Highly Confidential Information.

19.     All provisions of this Order restricting the communication or use of
Confidential Information or Highly Confidential Information shall continue to be
binding after the conclusion of this action, unless otherwise agreed or ordered.
Upon conclusion of the litigation, a party in the possession of Confidential
Information or Highly Confidential Information, other than that which is contained
in court filings, correspondence, deposition transcripts, reports of such party's
experts that have been exchanged with other parties, or such party's work product
shall either (a) return documents containing such information no later than thirty

15

(30) days after conclusion of this action to counsel for the party or other person who provided such information, or (b) destroy all documents containing such information within the time period upon consent of the party or other person who provided the information and certify in writing within thirty (30) days after the documents have been destroyed.

20.    The terms of this Order do not preclude, limit, restrict, or otherwise apply to the use of documents or other materials at trial or any pre-trial hearing.

21.    Nothing in this Order shall limit a party's or a non-party's ability to object to the use of Confidential Information or Highly Confidential Information at trial or a pre-trial hearing. Additionally, the designation, or lack of designation, of Information as Confidential or Highly Confidential under this Order shall be of no evidentiary effect in this case.

22.    The parties shall confer and attempt to agree before any trial or pre-trial hearing on the procedures under which Confidential Information or Highly Confidential Information may be introduced into evidence or otherwise used at such trial or hearing. Upon reaching agreement, the parties shall give notice of the terms of such agreement to each non-party producing Confidential Information or Highly Confidential Information which may be used or introduced at such trial or hearing. Absent agreement, the Court shall be asked to issue an order governing the use of such Confidential Information or Highly Confidential Information at

16

trial or hearing upon reasonable notice to all parties and non-parties who have produced such information.

23.    Rule 26(b)(5) of the Federal Rules of Civil Procedure shall govern any inadvertent production of privileged or protected materials. Nothing herein shall be deemed to waive any applicable privilege or work product protection, or to affect the ability of a party to seek relief for an inadvertent disclosure of material protected by privilege or work product protection.

24.    Nothing in this Order shall prevent any party hereto from producing any document or information in its possession to another person in response to a subpoena or other compulsory process, provided, however, that if such party receives a subpoena or other compulsory process seeking Confidential Information or Highly Confidential Information, that party shall, as far in advance of making any production as is reasonably possible, and, in any event, no less than five (5) days before making any production, give written notice to counsel for the Designating Party, and, unless prohibited by law, enclose to such counsel a copy of the subpoena or other compulsory process.

25.    Any non-party from which or from whom discovery is sought shall have the same rights and be subject to the same obligations under this Order as a party.

17

26.    When a party seeks discovery from a non-party, such party shall serve a copy of this Order on such non-party.

27.    The parties retain the right, singly and/or collectively, to seek modification of this Order by the Court.

GOLDBERG KATZMAN, P.C.

By:___/s/ Steven Grubb_____
Steven E. Grubb, Esquire
320 Market Street, Strawberry
Square
P.O. Box 1268
Harrisburg, PA 17108
Phone (717) 234-4161
Fax (717) 234-6808
*Attorney for Plaintiff*

MCNEES   WALLACE   &   NURICK
LLC

By:___/s/ Harvey Freedenberg_____
Harvey Freedenberg, Esquire
100 Pine Street
Harrisburg, PA 17101
Phone (717) 237-5267
Fax (717) 260-1693
*Attorney for Defendant Dentsply*
*International, Inc.*

GARWIN GERSTEIN & FISHER LLP

By:___/s/ Adam Steinfeld_____
Bruce E. Gerstein, Esquire
Noah Silverman, Esquire
Adam Steinfeld, Esquire
1501 Broadway, Suite 1416
New York, NY 10036
Phone (212) 398-0055
Fax (212) 764-6620
*Attorneys for Plaintiff*

LATHAM & WATKINS LLP

By:___/s/ Charles Price_____
Margaret M. Zwisler, Esquire (#
245951)
Eric J. McCarthy, Esquire (# 455769)
Charles R. Price, Esquire (# 488425)
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
Phone  (202) 637-2200
Fax (202) 637-2201
*Attorneys for Defendant Dentsply*
*International, Inc.*

18

Dated:    _____ Jan. 25, 2008 _____

IT IS SO ORDERED.

SIGNED AND ENTERED this _____ 25ᵗʰ _____ day of _Jannany_ , 2008.

_____
UNITED STATES DISTRICT JUDGE

19

## ATTACHMENT A

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

```
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ x
_ _ _ _ _
```

NOWAK DENTAL SUPPLIES, INC.,

      Plaintiff,

      v.

DENTSPLY INTERNATIONAL, INC.,

      Defendant.

No. 1:07-cv-01799

(Judge Conner)

```
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ x
_ _ _ _ _
```

### CERTIFICATION

I hereby certify my understanding that Confidential Information and/or

Highly Confidential Information is being provided to me pursuant to the terms and

restrictions of the Stipulated Protective Order dated _____,

in *Nowak Dental Supplies, Inc. v. Dentsply Int'l, Inc., et al.*, No. 1:07-cv-01799

(M.D. Pa.).  I have been given a copy of that Order and read it.  I agree to be bound

by the Order. I will not reveal the Confidential Information or the Highly

Confidential Information to anyone, except as allowed by the Order. I will

maintain all such Confidential Information and Highly Confidential Information --

including without limitation copies, notes, or other transcriptions made therefrom -

- in a secure manner to prevent unauthorized access to it. No later than thirty (30)

days after the conclusion of this action, I will destroy the Confidential Information

and Highly Confidential Information –including without limitation copies, notes,

or other transcriptions made there from - or return it to the counsel who provided

me with the Confidential Information and/or the Highly Confidential Information.

I hereby consent to the jurisdiction of the United States District Court for the

Middle District of Pennsylvania, for the purpose of enforcing the Stipulated

Protective Order.

DATED: _____    _____

                                                    Name